## REEVES v. CORNING et al.

### *(Circuit Court, D. Indiana.* August 19, 1892.)

### No. 8,706.

1. REMOVAL OF CAUSES—LOCAL PREJUDICE—NOTICE OF MOTION.
    Under the "prejudice and local influence" clause of the act of March 3, 1887, § 2, notice to the adverse party of a motion for the removal of a cause is not jurisdictional, and such motion may be made upon *ex parte* hearing, though it is the better practice to give notice. *Adelbert College* v. *Toledo, etc., Ry. Co.*, 47 Fed. Rep. 836, approved.

2. SAME—MOTION TO REMAND—COUNTER AFFIDAVITS.
    Where a petition supported by affidavits for the removal of a cause from a state to a federal court has been legally granted under the "prejudice and local influence" clause of Act March 3, 1887, § 2, cl. 4, plaintiff will not be allowed to file counter affidavits denying the existence of local prejudice in support of a motion to remand, when it is not shown that the court was misled or imposed upon in granting the order of removal.

3. SAME—CITIZENSHIP—ARRANGEMENT OF PARTIES.
    Where one of the defendants is a mere stakeholder or interested on the side of plaintiff, the fact that he is a citizen of the same state with plaintiff will not defeat the right of his codefendant, with whom the real controversy exists, to remove the cause, under the provisions of Act 1887, § 2.

4. PATENTS FOR INVENTIONS—ASSIGNMENT—RESCISSION.
    The purchaser of a patent right cannot rescind the sale on the ground of false representations that the patent was valid, and did not interfere with any prior patent, where the contract of sale itself contains an express warranty to the same effect, and an engagement on the part of the grantor to defend at his own expense all suits for infringement.

5. SAME—FALSE REPRESENTATIONS—MATTERS OF OPINION.
    Representations by the seller of a patent right, that the same is valid and does not interfere with any prior patent, must be regarded as matters of opinion, and not as statements of fact, unless it appears that there was a prior patent covering the identical invention, and that the seller was aware thereof.

6. SAME—RESCISSION—STATU QUO.
    Where a contract for the sale of certain patent rights is sought to be rescinded, plaintiff must first show that he has done all in his power to place defendant *in statu quo* by returning the patents.

7. SAME—ASSIGNMENT—STATE REGULATION—CONSTITUTIONAL LAW.
    Rev. St. Ind. 1881, § 6054, requiring a person who sells or offers for sale patents to file with the clerk of the proper county a duly authenticated copy of the letters patent, and an affidavit that the letters are genuine and have not been revoked or annulled, and that he has a right to sell the same, is a legitimate exercise of the police power of the state, and is not in conflict either with Const. U. S. art. 1, § 8,

granting to authors and inventors the exclusive right to their respective writings and discoveries for limited times, or with the provision of the fourteenth amendment, which forbids the states to abridge the privileges and immunities of citizens of the United States. *Breehbill* v. *Randall*, 1 N. E. Rep. 362, followed. *Castle* v. *Hutchinson*, 25 Fed. Rep. 394, distinguished.

8. CONSTITUTIONAL LAW—VALIDITY OF STATUTES—POWERS OF COURTS.

A court has no power to adjudge a duly enacted statute unconstitutional simply because it may seem to the court that such legislation does not conform to the general theory upon which the government is founded.

In Equity. Suit by Alfred B. Reeves against Thomas J. Corning and Joseph I. Irwin to rescind a contract of sale of certain patents, and to recover possession of a note. Heard on demurrer to the complaint. Sustained as to the first paragraph, and overruled as to the second.

*Cooper & Cooper* and *Stansifer & Baker*, for plaintiff.

*Butler, Snow & Butler*, for defendants.

BAKER, District Judge. This action was commenced in the circuit court of Bartholomew county, Ind., on the 11th day of May, 1891. The state court ordered process against the defendant Irwin to be issued to the sheriff of Bartholomew county, returnable September 29, 1891. Notice by publication was given to the defendant Corning, and was made returnable on the same day. On the 23d day of September, 1891, the defendant Corning, a citizen of the state of Illinois, filed his verified petition for the removal of the cause from the state court into this court, on the ground of prejudice and local influence, making it impossible for him to obtain justice in said court, or in any other state court into which said cause could be removed. The court, having examined the petition and its exhibits, and being fully advised in the premises, found that the defendant Corning was entitled to have the cause removed from the state court into this court for the reasons set out in his petition. The court thereupon adjudged that the cause be removed from said state court into this court, under and in pursuance of the provisions of an act of congress approved August 13, 1888.

The plaintiff has appeared specially, and moved the court to remand, on the ground that the order of removal was made on an *ex parte* hearing, without notice. It is argued that notice of the petition for removal is jurisdictional, and that the order, being made without notice, is void, and ought so to be held on the motion to remand. It is further insisted, if notice is not jurisdictional and the cause was rightfully removed, the plaintiff ought to have leave to file affidavits controverting the facts on which the court awarded the removal. The plaintiff, therefore, appearing specially, has asked to be permitted to reopen the issue of prejudice and local influence, and to be allowed to file counter affidavits. The motion for leave to file counter affidavits is bottomed on the theory that this court had the authority to order a removal on an *ex parte* application, but that an order of removal so made, like an *ex parte* order of the court granting a restraining order, is intended to be in force temporarily, and to be continued in force only in case the court should be satisfied, after a hearing on notice, that its original order was just and proper.

The act of congress provides that—

"Where a suit is now pending, or may be hereafter brought, in any state court, in which there is a controversy between a citizen of the state in which the suit is brought and a citizen of another state, any defendant, being such citizen of another state, may remove such suit into the circuit court of the United States for the proper district at any time before the trial thereof, when it shall be made to appear to said circuit court that, from prejudice or local influence, he will not be able to obtain justice in such state court, or in any other state court to which the said defendant may, under the laws of the state, have the right, on account of such prejudice or local influence, to remove said cause." Act March 3, 1887, § 2.

The statute does not, in terms or by necessary implication, require notice to the state court or to the adverse party of the application for removal on the ground of prejudice or local influence. Doubtless the better, as well as the safer, practice would ordinarily be for the court to decline to hear the application until proper notice of the hearing had been given. The question, however, is one of power or rightful authority, and not one relating to the propriety of methods of procedure. The only requirement of the statute is that the party asking for a removal "shall make it appear to the court that, from prejudice or local influence, he cannot obtain justice in the state court." Questions of prejudice or local influence are matters largely resting in opinion, and are not generally susceptible of proof by evidence of facts, like issues in ordinary actions at law or suits in equity. The court must be legally, not merely morally, satisfied of the truth of the allegation that, from prejudice or local influence, the defendant will not be able to obtain justice in the state court. It has been well said that—

"Legal satisfaction requires some proof suitable to the nature of the case,—at least an affidavit of a credible person, and a statement of facts in such affidavit, which sufficiently evince the truth of the allegation. The amount and manner of proof required in each case must be left to the discretion of the court. A perfunctory showing by a formal affidavit of mere relief will not be sufficient. If the petition for removal states the facts upon which the allegation is founded, and that petition be verified by affidavit of a person or persons in whom the court has confidence, this may be regarded as *prima facie* proof sufficient to satisfy the conscience of the court. If more should be required by the court, more should be offered." *In re Pennsylvania Co.*, 137 U. S. 457, 11 Sup. Ct. Rep. 143.

The facts and reasoning in this case are inconsistent with the claim that notice is jurisdictional. Since this case was decided, it has been held, on its authority, that notice was not necessary. In the case of *Carpenter* v. *Railway Co.*, 47 Fed. Rep. 535, in which no notice of the original application had been given, the court, on a motion to remand, said that ordinarily one hearing and determination, though *ex parte*, will be held final, and overruled the motion to remand. In the case of *Adelbert College* v. *Toledo, etc., Ry. Co.*, 47 Fed. Rep. 836, the court held, on an application to remove, on account of prejudice and local influence, that no notice was required. It is said:

"There is no requirement in the statute that the opposing side shall have notice of the application to remove, and be allowed an opportunity to be heard thereon. It would perhaps be the better practice to give the opposite party

notice of the application to remove, before action thereon by the court; but that is a matter resting in the discretion of the court, and not a matter of right."

It is claimed by counsel for the plaintiff that in the case of *Malone* v. *Railway Co.*, 35 Fed. Rep. 625; of *Short* v. *Railway Co.*, 34 Fed. Rep. 225; and of *Hakes* v. *Burns*, 40 Fed. Rep. 33,—it has been held that notice was necessary. These cases were decided before the decision in *Re Pennsylvania Co.*, *supra*, had been made; and consequently these cases, even if they held that notice was necessary, would not be controlling. These cases, however, do not hold that notice is necessary. In the case of *Malone* v. *Railway Co.*, *supra*, Mr. Justice HARLAN, on page 629, said:

"Although such investigation or examination is not required by any express words of the statute to be had upon notice to the party against whom the removal is asked, such notice will best accomplish the object which congress had in view."

The learned judge was of the opinion that notice was not necessary, but that it was the better practice to require it. In this opinion I fully concur.

In the case of *Short* v. *Railway Co.*, *supra*, Mr. Justice BREWER, then circuit judge, said:

"Under the local prejudice clause, no petition need be filed; all that is required is that it shall be made to appear to the circuit court that, from prejudice or local influence, the party will not be able to obtain justice in such state court; and this showing may be made by affidavit, and, if this contains a specific averment, it is *prima facie* evidence of the fact, and throws the case into this court, leaving the other party to challenge its truth."

In the case of *Hakes* v. *Burns*, *supra*, the question was as to the form and sufficiency of the affidavit, it being admitted that a removal, based on a sufficient affidavit, would be good without any notice. I am aware of no case in which it has been directly held that notice was jurisdictional. The question has been often raised whether it was not the safer and better method of procedure to require notice, and on this question there has been a general agreement of opinion in favor of notice,—not as necessary, but to avoid an improvident removal.

The motion to remand proceeds in part on the theory that the plaintiff has a constitutional right to be heard, and hence a constitutional right to be notified of the application, and that, not having had any notice, the order of removal is wholly void. The conclusion would be unanswerable, if the premises were correct. It is too late, however, to claim any such constitutional right. The old removal act permitted a removal on an *ex parte* affidavit without notice. The cases which hold, either directly or by necessary implication, that the plaintiff has no constitutional right to notice of the application for removal on the ground of prejudice or local influence, are numerous. The following either directly decide the question, or at least bear strongly upon it: *Fisk* v. *Henarie*, 32 Fed. Rep. 417; *Hills* v. *Railway Co.*, 33 Fed. Rep. 81; *Dennison* v. *Brown*, 38 Fed. Rep. 535; *Amy* v. *Manning*, Id. 536, 868; *Short* v. *Railway Co.*, 34 Fed. Rep. 225; *Malone* v.

*Railway Co.*, 35 Fed. Rep. 625; *Whelan* v. *Railroad Co.*, Id. 849; *Huskins* v. *Railway Co.*, 37 Fed. Rep. 504; *Lumber Co.* v. *Holtzclaw*, 39 Fed. Rep. 578; *Hakes* v. *Burns*, 40 Fed. Rep. 33; *Minnick* v. *Insurance Co.*, Id. 369; *Cooper* v. *Railway Co.*, 42 Fed. Rep. 697; *Brodhead* v. *Shoemaker*, 44 Fed. Rep. 518; *Walcott* v. *Watson*, 46 Fed. Rep. 529; *Smith* v. *Lumber Co.*, Id. 819; *Carpenter* v. *Railway Co.*, 47 Fed. Rep. 535; *Adelbert College* v. *Toledo, etc., Ry. Co.*, Id. 836.

It is further insisted that the verified petition does not state facts sufficient to constitute a *prima facie* case for removal. No good purpose would be subserved by setting out the petition, or by giving its substance. I have carefully examined it, and entertain no doubt that the facts therein contained make out a *prima facie* case. The case of *Smith* v. *Lumber Co.*, 46 Fed. Rep. 819, exhibits facts similar in their essential features to those in the case at bar. The court in that case sustained an order of removal.

The plaintiff further claims that the cause should be remanded, because Irwin, the codefendant, is a necessary party, and is a citizen of the same state with the plaintiff. It is shown affirmatively, both in the complaint and in the petition for removal, that the defendant Irwin is either a stakeholder, or is interested on the same side with the plaintiff and adversely to the defendant Corning. In such a case, the real party defendant may have the cause removed without regard to the citizenship of other defendants, whose interests are nominal, or adverse to the party seeking a removal. The case of *Bacon* v. *Rives*, 106 U. S. 99, 1 Sup. Ct. Rep. 3, holds that any person interested as a mere stakeholder, or one occupying the position of a garnishee, is not a party whose presence, if he be a citizen of the same state with the plaintiff, will defeat the right of his codefendant, with whom the real controversy exists, to remove the cause. To the same effect, and resting on the authority of the above case, is the case of *First Nat. Bank* v. *Merchants' Bank*, 37 Fed. Rep. 657; of *Anderson* v. *Bowers*, 40 Fed. Rep. 703; of *Myers* v. *Murray*, 43 Fed. Rep. 695; of *Brown* v. *Murray*, Id. 614; and of *Wilder* v. *Steel & Iron Co.*, 46 Fed. Rep. 676. Courts have regard to the substance of the issue, and the right of removal does not depend upon the position of the parties on the record. Otherwise the plaintiff would always have it in his power to defeat the right of removal.

Inasmuch as the plaintiff had no right to notice of the application for removal, it follows that he has no right to file counter affidavits, after a removal has been adjudged. It is a matter of sound discretion, and the power of the court to permit counter affidavits to be filed ought to be cautiously exercised. Such leave never should be granted, unless a very strong case is shown for asking the court to reverse its judgment awarding a removal. A motion for leave to file counter affidavits is, in effect, an application to the court for a rehearing without showing cause. This is the view taken by the court in the recent case of *Adelbert College* v. *Toledo, etc., Ry. Co.*, 47 Fed. Rep. 836, construing the prejudice and local influence clause of the statute. In that case, a removal had been ordered on affidavits simply stating the existence of prejudice and

local influence which would prevent the defendant from obtaining jus-
tice in the state court.    The affidavits closely followed the language of
the statute.    In overruling a motion to remand, the court said :

"It having been made to appear to this court, in December, 1890, that
from prejudice or local influence the petitioners for removal could or would
not be able to obtain justice in the state courts, and the order for the re-
moval of the suit having been made, it would not be proper now to receive
or consider counter affidavits denying the existence of any such prejudice or
local influence, and thus raise an issue on the facts.    The court, in the exer-
cise of a legal discretion, having been satisfied with the *prima facie* showing
made by the petition for removal and accompanying affidavits, its action in
ordering the removal cannot be properly called in question, or be set aside
thereafter upon affidavits disputing the fact of the existence of prejudice or
local influence."

The case of *Carpenter* v. *Railway Co.*, 47 Fed. Rep. 535, holds that,
on a motion to remand, the court will not permit the order of removal
to be overhauled on counter affidavits.    Whether, in any case, the filing
of counter affidavits will be permitted must be left to the sound discre-
tion of the court.    It ought not to be allowed, unless it is clearly made
to appear that the court has been imposed upon or misled.    Here no
such showing is made.    For these reasons the motion to remand and
the motion for leave to file counter affidavits must be overruled.

2.  The complaint in this case is in two paragraphs, for the rescission
and cancellation of a contract, and to recover possession of a note.    The
defendant Corning has demurred to each paragraph for want of facts.
The first paragraph alleges that on the 3d day of April, 1891, the plain-
tiff and defendant Corning entered into a written contract, which is
made part of the complaint, by the terms of which Corning sold and
transferred to plaintiff, for $30,000, certain patents for an improve-
ment in baling presses.    The grounds on which a rescission is sought
are as follows:

"Plaintiff avers that said Corning, in order to induce him to enter into said
contract, and make said cash payment, and assign said note, falsely and
fraudulently represented to plaintiff that said pretended improvement was
his own invention, and was not covered by any prior patent, when in fact a
patent had been granted on the same improvement to another person some
time previous to the granting of the said patent to said Corning, and the said
pretended improvement of said Corning was an improvement on said prior
patent; that said representations were false, and known to be so by said Cor-
ning at the time; that plaintiff was ignorant of the facts in regard to said prior
patent, and believed and relied upon said representations, and was thereby
induced to enter into said contract, and make said cash payment, and assign
said note."

The plaintiff alleges that the false representations were "that said pre-
tended improvement was his own invention, and was not covered by a
prior patent."    It is further alleged that "said pretended improvement
of said Corning was an improvement on said prior patent."    The plain-
tiff thus admits that Corning had invented an improvement in baling
presses, and, for aught that appears, his patent simply covered that
improvement; but it is alleged that it was an improvement on said

prior patent. *Non constat* the improvement on the prior patent was all that he claimed to be his invention, or represented as not covered by a prior patent. It does not appear that he represented that any improvement, other than the one which it is admitted he· made, was his own, and was not covered by a prior patent. But, as this defect is not discussed, it is not my purpose to decide the sufficiency of the paragraph on this ground.

Counsel for defendant Corning insist that this paragraph is insufficient, inasmuch as it alleges, as a ground for rescinding the contract, a false representation concerning the interference of a prior patented invention with the invention of the defendant, and that such representation is matter of opinion, concerning which there can be no actionable fraud, because the court must presume the question of interference to have been decided in favor of the owner of the last patent, unless the article or process for which the last patent is issued is identically similar in form, manner, and appearance to the article or process for which the prior patent was granted. Counsel for the plaintiff concede the general rule to be that the law does not recognize, as an actionable wrong, false representations as to matters of opinion or judgment, but they claim that the representations in this case are to be regarded as affirmations of fact, and then, if false, that an action may be maintained upon them. There is no certain rule of law by the application of which it can be determined when false representations constitute matter of opinion or matter of fact. Each case must, in large measure, be adjudged upon its own circumstances. In reaching its conclusion, the court will take into consideration the intelligence and situation of the parties, the general information and experience of the people as to the nature and use of the property, the habits and methods of those dealing in or with it, and then determine, upon all the circumstances of the case, whether the representations ought to have been understood as affirmations of fact, or as matters of opinion or judgment.

It must ·be an unusual case where a man who has obtained a patent for an invention may not say that the invention thereby secured is his own, and that it does not interfere with any prior patent. The patent office is presumed to have so declared by issuing the patent. It is expressly made the duty of the patent office to make a previous examination of its records for the purpose of preventing interferences. Rev. St. U. S. 1878, § 4893. The result of an examination, if in favor of the patent, though not final, ought to have sufficient force to justify the owner of the patent in saying that there is no interference between his patent and any prior one, unless there is, in fact, on the records of the patent office, a patent identically similar, which the patent officers have negligently overlooked, or fraudulently failed to consider, and of the existence of which the defendant is shown to have had knowledge. The application of this principle can work no injustice where, as in this case, no attempt has been made to have the patent set aside as an infringement, and where, apparently, no one except the plaintiff has questioned its validity. There is no allegation in the paragraph under considera-

tion of the nature of the improvement, except that it is an improvement in baling presses. What the defendant's patent covered is not disclosed, and the character of the prior patent of which the defendant's is alleged to be an improvement is not stated. There is no distinct allegation that the prior patented invention is identically similar to that of the defendant, nor that the defendant had knowledge that the prior invention and his own improvement were identical. These considerations have led me to the conclusion that the representations must have been intended and understood to be matters of opinion, and not affirmations of fact. The authorities on this question are not in harmony, nor are they easily reconcilable. In my judgment, however, the above conclusion is supported by the better reason and the greater weight of authority. The case of *McKee* v. *Eaton*, 26 Kan. 226, is more nearly in point for the plaintiff than any other case which has fallen under my observation. The complaint in that case contained allegations, in great detail, which the court held to be statements of fact, and not matters of opinion or judgment. The facts in that case are so different from the allegations in this case that it yields no support to the paragraph in question. Counsel also cite and rely on *Hickey* v. *Morrell*, 102 N. Y. 454, 7 N. E. Rep. 321; 8 Wait, Act. & Def. 274; *Rose* v. *Hurley*, 39 Ind. 77; *Iowa Economic Heater Co.* v. *American Economic Heater Co.*, 32 Fed. Rep. 735; and *Clark* v. *Edgar*, 84 Mo. 106. I have carefully examined these authorities, and it suffices to say that I do not think they support the plaintiff's contention.

The recent case of *Dillman* v. *Nadlehoffer*, 119 Ill. 567, 7 N. E. Rep. 88, is exactly in point upon the proposition that representations regarding the validity of a patent right are matters of opinion, and not statements of fact, for the making of which a suit for rescission will lie. That was a suit to rescind a sale of patent rights on the ground of false and fraudulent representations in regard to their validity. The representations are set out in the opinion of the court as follows:

"The defendant represented to plaintiffs that said improvements were his own invention, and that the patents issued thereon were genuine and valid, and that they did not conflict with or infringe upon the patents or inventions of any one, and particularly those controlled by the Washburn & Moen Manufacturing Company and J. L. Ellwood, or their licensees."

The court held that these representations were matters of opinion, and not affirmations of fact, and that they did not constitute such fraudulent statements as were actionable in a court of equity in a suit for rescission.

There is another consideration equally fatal to the sufficiency of the paragraph. The contract sought to be rescinded, which is exhibited with and made a part of the paragraph, provides for the contingency that the defendant's patent may be an infringement on a prior patent, or may prove otherwise invalid. The language of the contract is as follows:

"I hereby warrant the genuineness and validity of said letters patent, and will defend the same against any and all suits for infringement to the dates

of said letters patent; and any expenses or costs that Alfred B. Reeves may necessarily incur, in any way or manner, in or about or concerning the genuineness or validity of the same, or in any suits for infringement as above stated, will be paid by me, and I shall stand indebted to the said Alfred B. Reeves in said sums; and in all suits and actions that may be necessary in and about the defense of said letters patent, and the prosecutions for infringement thereof, the said Alfred B. Reeves shall prosecute or maintain the same in his own name, or in my name, as may be necessary under the laws, subject to the provisions above stated as to costs and expenses."

Here the plaintiff expressly accepted a contract warranting the genuineness and validity of the patents, and that they were not infringements on prior patents. He agreed to prosecute and maintain all such suits and defenses as were necessary, growing out of infringements or otherwise, at the cost and expense of the defendant. The warranty covers the whole ground embraced in the alleged false representation, and conclusively demonstrates that the plaintiff did not rely on the verbal statements, but elected to protect himself by an express written warranty. It shows that the contingency of the patents ultimately proving to be invalid was in the minds of both contracting parties, and this was expressly provided for in the agreement. In such a case, the vendor cannot be held liable for a false representation made prior to the agreement, which is fully provided for and guarded against therein, where nothing appears to show, as in the case here, that the vendor has been guilty of any artifice, or of the use of other means, to prevent the purchaser from examining and judging for himself. Here the purchaser has exacted a written warranty carefully protecting himself from injury, if the representations of the defendant in regard to the validity of the patent should prove unfounded. In such case the purchaser must be content with the security which he has understandingly and voluntarily accepted. The case of *Dillman* v. *Nadlehoffer*, *supra*, is in point, and is decisive of this proposition.

There is another reason why this paragraph is insufficient. It does not allege that the plaintiff, prior to the bringing of the suit, returned or offered to return the patents to the defendant, and thus place him *in statu quo*, nor does it show any sufficient excuse for his failure so to do. It is too well settled to justify citations that, before an agreement can be rescinded, the plaintiff must have done all in his power, and with promptness, to place the defendant *in statu quo*. For these reasons the paragraph must be held bad.

3. The second paragraph of the complaint alleges that, on the 3d day of April, 1891, the plaintiff and defendant Corning entered into a written contract, a copy of which is made part of the paragraph, by the terms of which the defendant sold and transferred to the plaintiff, for $30,-000, certain patent rights for an improvement in baling presses. The grounds on which a rescission is sought are as follows:

"Plaintiff further avers that said contract was entered into, and said sale was effected, in the county of Bartholomew, and state of Indiana; that defendant Corning has never filed with the clerk of the court of said county copies of said letters patent, or either of them, duly authenticated or other-

wise, nor has he at any time made affidavit before such clerk that such letters patent, or either of them, are genuine, and have not been revoked or annulled, and that he has or had full authority to barter the rights so patented; nor has he filed such affidavit in the office of said clerk, as required by the statute of Indiana."

The provision of the statute relied upon is as follows:

"It shall be unlawful for any person to sell or barter, or to offer to sell or barter, any patent right, or any right which such person shall allege to be a patent right, in any county within this state, without first filing with the clerk of the court of such county copies of the letters patent, duly authenticated, and at the same time swearing or affirming to an affidavit, before such clerk, that such letters are genuine, and have not been revoked or annulled, and that he has full authority to sell or barter the right so patented; which affidavit shall also set forth his name, age, occupation, and residence, and, if an agent, the name, occupation, and residence of his principal. A copy of this affidavit shall be filed in the office of said clerk, and said clerk shall give a copy of said affidavit to the applicant, who shall exhibit the same to any person, on demand." Rev. St. Ind. 1881, § 6054.

The sufficiency of this paragraph hinges on the constitutionality of the above section.

Counsel for the defendant earnestly insist that this section of the state statute is invalid—(1) Because it requires evidence of the contract beyond that provided by congress, and places restrictions upon the assignment of the contract, evidenced by the patent, beyond the restrictions established by sections 4883, 4884, 4898, Rev. St. U. S. 1878, and is therefore in derogation of the right of congress "to promote the progress of science and useful arts, by securing for limited times, to authors and inventors, the exclusive right to their respective writings and discoveries." Const. U. S. art. 1, § 8. (2) Because the statute is in violation of the fourteenth amendment of the constitution of the United States, as it imposes peculiar and unreasonable restrictions upon the patentee beyond those imposed upon owners of other kinds of property, and thus abridges the privileges and immunities of the defendant as a citizen of the United States. (3) Because, assuming that the state, in the exercise of its police power, has the right to place restrictions upon the assignment of patent rights, the state statute is for the protection of the citizens of Indiana against their own tendency to speculation, and is paternal in its character,—a species of legislation which is repugnant to the whole theory of our government, and is therefore unconstitutional.

*First.* Aside from the statute, an inventor possesses no exclusive property or right in his invention. Others may appropriate it, and the inventor can obtain no redress in the courts, in the absence of a statute securing to him his invention, and giving him a right of action for its invasion. This doubtless grows out of the fact that an invention is an intellectual conception, and exists simply in notion, and in its nature is incapable of corporeal possession. In view of this fact, and to stimulate and reward inventive genius, the constitution conferred upon congress the power to secure to inventors, for limited times, the exclusive

right to their discoveries,—not as a monopoly, but as a fair recompense for the labor and expense incurred in producing and perfecting their inventions. Congress, at an early day, gave practical effect to this constitutional provision by the enactment of a system of patent laws, which, with some changes and additions, yet stands upon the statute book. The right secured by a patent is a covenant by the United States that it will, through its courts, exclude all persons from making, using, or vending the thing invented. The patent itself is simply the evidence of the contract which is executed to give effect to the right created and secured by the statute. The patent right is assignable, because congress has so declared, (Rev. St. U. S. 1878, § 4898,) like other contract rights. No legislation, however, was necessary to make the right assignable when it had been made property.

An invention secured by patent is property, and as much entitled to protection as other property. *Cammeyer* v. *Newton*, 94 U. S. 225. The right of the patentee, under letters patent for an invention granted by the United States, is exclusive of the government, as well as all others; and the government cannot use the patent without a license or compensation to the owner. *James* v. *Campbell*, 104 U. S. 356. The patented products of the invention become tangible property, and fall within the common mass, while the conception of the mind embodied in the invention and secured by the patent becomes clothed with the attributes of incorporeal property. As to the tangible products of an invention, it is settled by the case of *Patterson* v. *Kentucky*, 97 U. S. 501, that they fall within the domain of the police power of the state. That species of property is subject to taxation, and to the payment of debts, as other personal property. The national power will be fully satisfied if the property created by the patent be, for the time being, enjoyed and used exclusively, so far as under the policy of the several states the property shall be deemed fit for toleration and use. There is no need of giving this power any broader construction in order to attain the end for which it was granted.

While the tangible products of an invention, like other tangible property, are subject to the police power of the state, it is claimed that the incorporeal property created and secured by the statute in the invention itself does not lie within the domain of the police power of the state. "In the American constitutional system the power to establish regulations of police has been left with the states, and cannot be assumed by the national government." Cooley, Const. Lim. 574. "As the federal legislature cannot enact police regulations which will yield the citizens of the state just protection, it must be that the state legislatures may enact such legislation, or the citizens be left without protection." *New* v. *Walker*, 108 Ind. 365, 9 N. E. Rep. 386. In this power is embraced what Mr. Chief Justice MARSHALL, in *Gibbons* v. *Ogden*, 9 Wheat. 1, calls that "immense mass of legislation which embraces everything within the territory of the state, not surrendered to the general government; all which can be most advantageously exercised by the states themselves." The police power is one of wide scope, whose limits are

susceptible of no precise definition. Blackstone defines this power to be—

"The due regulation and domestic order of the kingdom, whereby the inhabitants of a state, like members of a well-governed family, are bound to conform their general behavior to the rules of propriety, good neighborhood, and good manners, and to be decent, industrious, and inoffensive in their respective stations." 4 Bl. Comm. 162.

Judge Cooley says:

"The police power of a state, in a comprehensive sense, embraces the whole system of internal regulation by which the state seeks, not only to preserve the public order and to prevent offenses against the state, but also to establish for the intercourse of citizens with citizens those rules of good manners and good neighborhood which are calculated to prevent conflict of rights, and to insure to each the uninterrupted enjoyment of his own, so far as it is reasonably consistent with a like enjoyment of rights by others." Cooley, Const. Lim. 572.

Mr. Justice HARLAN, in *Patterson* v. *Kentucky*, 97 U. S. 501, says:

"By the settled doctrine of this court, the power extends, at least, to the protection of the lives, the health, and the property of the community against the injudicious exercise by any citizen of his own rights."

The protection of the citizen from fraud and imposition evidently falls within the just limits of the police power. This power reaches all persons and things within the state, and it may be rightfully exercised by the state over them, unless the power is denied by constitutional limitation, or by an act of congress, or a treaty made pursuant to the constitution. The right of the state to make reasonable police regulations to protect the purchaser of the incorporeal property created by the patent laws from fraud and imposition in its sale is not denied to the states in express terms, either by the federal constitution or by the laws enacted by congress. This power originally and inherently belonged to the states, and it yet remains with them, unless impliedly taken away by a fair construction of the constitution, or the laws enacted in pursuance thereof. Whether this power may be exercised by the states in regard to patent rights depends on the object, purpose, and scope of the patent laws. "The sole object and purpose of the laws," said Mr. Justice MILLER, (*In re Brosnahan*, 18 Fed. Rep. 62,) "which constitute the patent and copyright system, is to give to the author and the inventor a monopoly of what he has written or discovered, that no one else shall make or use or sell his writings or his invention without his permission; and what is granted to him is the exclusive right; not the abstract right, but the right in him to the exclusion of everybody else. * * * The purposes of the patent law and the constitutional provision are answered when the patentee is protected against competition in the use of his invention by others, and when the law prevents others from infringing on his exclusive right to make, use, and sell the object to be accomplished. This proposition is fully supported by the supreme court in the case of *Patterson* v. *Kentucky*, 97 U. S. 501. That case also cites with approval the following language of the supreme court of Ohio in the case of *Jordon* v. *Overseers*, 4 Ohio, 295: 'The sole

operation of the statutes [the patent laws] is to enable him [the inventor] to prevent others from using the product of his labors, except with his consent. But his own right of using is not enlarged or affected. There remains in him, as in every other citizen, the power to manage his property or to give direction to his labors at his pleasure, subject to the paramount claims of society, which require that his enjoyment may be modified by the exigencies of the community to which he belongs, and regulated by laws which render it subservient to the general welfare, if held subject to state control.' The principle is reaffirmed in *Webber* v. *Virginia*, 103 U. S. 344."

The section in question in no way conflicts with this exclusive right. The right to exclude others is as perfect, and can be as readily and stringently enforced, since, as before, the passage of the law. It imposes no hardship on honest dealers, and, if it hinders dishonest ones, it ought the more to merit the approval of the court. In no just sense is it hostile to patent rights. Its requirements are simple and easy of compliance. It requires no judicial examination. All that it requires is that the seller shall file copies of the letters patent, duly authenticated, and at the same time make and file an affidavit that the letters are genuine; that is, not forged or fraudulent, and that they have not been revoked or annulled. It does not require him to state that there is no other patent covering the same invention, nor that the article or process patented is one for which a valid patent might be issued. It does not impede the course of commerce. It simply compels an exhibition of the source of title, and a description of the thing offered for sale. It casts no imputation of dishonesty on the owners of patent rights. Its sole purpose is, by requiring a public registry conveniently accessible to purchasers, to protect them, and to inspire them with confidence in the seller, and thus to facilitate, rather than hinder, honest traffic. It is a matter of common knowledge, recognized alike by courts and legislators, that patent rights have been used as a prolific instrument of fraud and imposition. A just measure of protection renders some law, domestic and local in its character, a matter of proper legislative cognizance. There is no express grant of power to congress enabling it to protect purchasers. The exercise of this power by congress is but incidental, if at all, under the grant to secure inventors. Congress has no power, express or implied, to give a full measure of protection. The most it could do would be to require registry in its own records. It could not enforce registration in state records. Hence, if any power to provide a remedy exists, it resides with and must be provided by the states. I think such power exists in the state. The provision in question affords such protection to purchasers, while it imposes no unjust burden on honest dealers. It deprives the owner of a patent of no right or immunity justly his own, nor does it, in any just sense, discriminate against the owners of patent rights.

The cases in the state courts which have denied this power to the states have followed and rested on the authority of the case of *Ex parte Robinson*, 2 Biss. 309. Following this case, the supreme court of this

state, in *Machine Co.* v. *Butler*, 53 Ind. 454, held the provision in question unconstitutional. In *Breechbill* v. *Randall*, 102 Ind. 528, 1 N. E. Rep. 362, the court, without dissent, expressly overruled the above case, and affirmed the validity of the section in question. The decision in *Breechbill* v. *Randall*, *supra*, is bottomed on the ground that the case of *Ex parte Robinson*, *supra*, has been overruled by the case of *Patterson* v. *Kentucky*, 97 U. S. 501. I think the court is correct in holding that the case of *Ex parte Robinson* has ceased to be authoritative, and is in effect in conflict with the doctrine of the case of *Patterson* v. *Kentucky*, *supra*. The case of *Breechbill* v. *Randall*, *supra*, has been affirmed and followed by the supreme court of this state in *Hockett* v. *State*, 105 Ind. 250, 5 N. E. Rep. 178; *New* v. *Walker*, 108 Ind. 365, 9 N. E. Rep. 386; *Hankey* v. *Downey*, 116 Ind. 118, 18 N. E. Rep. 271; *Pape* v. *Wright*, 116 Ind. 502, 19 N. E. Rep. 459; and *Tescher* v. *Merea*, 118 Ind. 586, 21 N. E. Rep. 316. The appellate court of this state has also affirmed the constitutionality of the provision in question. *Robertson* v. *Cooper*, 1 Ind. App. 80, 27 N. E. Rep. 104.

Our attention is called to the case of *Castle* v. *Hutchinson*, 25 Fed. Rep. 394, where the second section of the statute of Indiana, requiring the seller of the patent to write the words, "Given for a patent right," in any note given for a patent right, and making the failure to do so a criminal offense, was held to be unconstitutional. This decision may well be supported on the ground of an unjust and unauthorized discrimination. It singles out notes given for patent rights from the common mass of such property, and requires them, to be valid, to show on their face the nature of their consideration. Such discrimination would seem to render the second section of the statute unconstitutional. If the section had required all notes to exhibit on their face the consideration for which they were given, a very different question would have been presented. In my opinion, the case of *Castle* v. *Hutchinson*, *supra*, is correctly decided; but it by no means is decisive of the question under consideration.

In the section before me there is an entire absence of hostile intent, either in the language employed, or in the circumstances giving rise to its enactment. It in no just sense discriminates against the owners of patents. It is uniform in its operation. It applies alike to foreign as well as domestic patents; to all citizens of Indiana, as well as to all residents of other states and countries; to all sellers of patent rights, whether as owners or agents. It applies to patent rights alone, because, unlike promissory notes given for patent rights, there are no other rights which can be put in the same category, or which experience has shown to require the same police regulation. They are the only species of incorporeal rights which can be regulated in the manner provided by the statute. The lawmaking power must be the judge of the necessity of police regulations for any species of property. When it recognizes the necessity and applies the remedy, the law cannot be adjudged invalid, merely because it applies to a particular commodity, or to the sellers of that commodity. *Powell* v. *Pennsylvania*, 127 U. S. 678, 8 Sup. Ct. Rep.

992, 1257. These considerations lead me to the conclusion that the provision in question is not invalid as being in conflict with section 8 of article 1 of the constitution of the United States, granting to congress the power to secure to inventors the exclusive right to their discoveries, nor with the laws passed in pursuance thereof.

*Second.* The statutory provision in question is not in conflict with the fourteenth amendment of the constitution of the United States. It imposes no peculiar or unreasonable restrictions upon the patentee, nor does it in any manner abridge the privileges and immunities of the defendant as a citizen of the United States. This provision is a legitimate exercise of the police power of the state for the prevention of fraud, and is not inconsistent with the constitutional provision or the laws relating to patents. It is the settled doctrine of the supreme court that, as government is organized for the purpose, among others, of preserving the public morals, and preventing fraud and injury, it cannot divest itself of the power to provide for these objects; and that the fourteenth amendment was not designed to interfere with the exercise of that power by the state. *Butchers' Union Slaughter-House Co.* v. *Crescent City, etc., Co.,* 111 U. S. 746, 4 Sup. Ct. Rep. 652; *Barbier* v. *Connolly,* 113 U. S. 27, 5 Sup. Ct. Rep. 357; *Yick Wo* v. *Hopkins,* 118 U. S. 356, 6 Sup. Ct. Rep. 1064; *Mugler* v. *Kansas,* 123 U. S. 623, 8 Sup. Ct. Rep. 273; *Powell* v. *Pennsylvania,* 127 U. S. 678, 8 Sup. Ct. Rep. 992, 1257. The case last cited fully discusses the scope of the fourteenth amendment, and clearly shows that it does not limit the proper exercise of the police power of the states. As there can be no doubt that the prevention of fraud falls within the narrowest definition of the "police power," it would seem to be clear that the statute in question does not conflict with that amendment.

*Third.* Little need be said in respect of the contention that the provision of the state statute is for the protection of the citizens of Indiana against their own tendency to speculation, and is paternal in its character, and is a species of legislation repugnant to the theory of our government, and is therefore unconstitutional. It is a doctrine as novel as it is unsound that the courts are clothed with rightful power to adjudge a statute, duly enacted, unconstitutional on the sole ground that the court may think that the legislation in question does not conform to our theory of government. Should such a deviation occur, its correction belongs to the people, and the appropriate remedy is to be sought through the ballot box. The highest exertion of judicial power is invoked when a court is called upon to nullify the solemn act of a co-ordinate department of the government. It is a power to be exercised with great caution and reluctance. It should never be exercised unless the court feels an unhesitating assurance that the statute in question is in clear and palpable conflict with the constitution. Such is not the case here. The assumption that the provision under consideration is peculiar or unusual, because it seeks to check improvidence, is without foundation. The statute books abound with instances of legislation having this object in view, whose propriety and validity are unquestionable. The laws re-

straining the use of intoxicating drinks, those against betting on games of chance, and those forbidding dealing in options, are instances of legislation of a paternal character, and are aimed to restrain the popular habits of improvidence and speculation. In my opinion the second paragraph states a good cause of action, and the demurrer thereto is overruled.