Wemple State Bank, Appellant, v. Continental Illinois
Company, Appellee.

Gen. No. 37,722.

MATCHETT, J., dissenting.

Opinion filed February 25, 1935.

V. D. McConnell and Owen Rall, both of Chicago,
for appellant.

Mayer, Meyer, Austrian & Platt, of Chicago, for
appellee; Frederic Burnham and Sherwood K. Platt,
both of Chicago, of counsel.

MR. PRESIDING JUSTICE O'CONNOR delivered the opinion of the court.

Plaintiff brought an action to recover damages against the defendant for fraud and deceit. Defendant's demurrer to the declaration was sustained, and plaintiff having elected to stand by its declaration, the suit was dismissed at plaintiff's cost, and it appeals.

The question for decision is, Does any one of the four counts of the declaration state a cause of action? In each of the four counts it is alleged that plaintiff is a banking corporation conducting a bank at Waverly, Illinois, a town of about 1,300 inhabitants; that plaintiff and its predecessors have been conducting a bank for a number of years; that for many years prior to September, 1931, it was a depositor in the Continental Illinois Bank and Trust Company of Chicago, that bank being its Chicago correspondent; that the Continental Bank had been engaged in the business of selling securities on its own account, and that plaintiff bank had from time to time purchased securities from the Continental Bank; that to induce plaintiff to buy such securities, the Continental Bank represented to plaintiff that it had extraordinary knowledge of the value of securities, having access to sources of information not available to plaintiff, and stated it would assist plaintiff in the selection and supervision of investments, and invited plaintiff from time to time to submit to it plaintiff's list of securities for such advice, and to call upon it whenever plaintiff desired such advice; that plaintiff, relying upon such representations, did purchase many thousands of dollars of securities from the Continental Bank which resulted in profit to the Continental Bank; that from time to time plaintiff acted upon the advice given to it by the Continental Bank in buying and selling securities; that in 1929 the Continental Bank caused the defendant Continental Illinois Company to be incorporated under the laws of Illinois; that all of the stock of the

defendant was owned by a trustee or trustees and held in trust for the stockholders of the Continental Bank; that defendant was incorporated to take over and conduct the bond and securities business of the Continental Bank; that the personnel was substantially the same as before the defendant was incorporated; that defendant continued to solicit plaintiff to buy securities and to seek its advice as it had theretofore done in its business with the Continental Bank; that the capital stock of the plaintiff bank was approximately $50,000, and that plaintiff had no facilities for obtaining adequate information about the value of stocks and bonds, but relied upon defendant in this respect; that on or about September 20, 1931, plaintiff was the owner and holder of about $100,000 par value of bonds and other securities, including $5,000 par value of Insull Utility Investments, Inc., Gold Debentures Series B, payable January 1, 1940, and $5,000 par value of Corporation Securities Company of Chicago Serial Gold Notes payable September 1, 1932, which it had theretofore purchased from the Continental Bank and from defendant; that defendant, together with certain other investment banking houses, underwrote the issue of the securities of the Insull Utility and the Corporation Securities and that it was the custom of such underwriters to be familiar with the value of securities so underwritten; that on or about September 20, 1931, plaintiff, relying upon the representation and invitation of defendant, inquired of defendant as to its opinion whether plaintiff should sell the $100,000 securities or any part of them, and was advised by defendant to sell all of its $100,000 securities except the Insull Utility Investments, Inc., and the Corporation Securities; that as to these securities defendant falsely represented that it had no opinion as to whether plaintiff should sell them; that it gave such opinion to plaintiff for the purpose of inducing plaintiff not to sell such securities; that plaintiff re-

lied upon defendant's statement that it had no information as to the advisability of plaintiff selling such securities, and plaintiff did not sell such securities, but retained them; that plaintiff had no source of information available to it in this respect; that at that time the Insull Utility Investments, Inc., and the Corporation Securities Company were heavily indebted to various Chicago and New York banks, including the Continental Bank; that defendant then knew that substantially all the assets of these two companies were held by various banks including the Continental Illinois Bank, as securities for large bank loans; that the Utility Debentures and the Corporation Securities were in effect unsecured and that these two companies had no assets of any substantial value; that defendant knew these securities were not sound investments and were not suitable to be owned by plaintiff and that it was advisable for plaintiff to then sell them at the market price, all of which facts were unknown to the plaintiff; that "said false and fraudulent representations to the plaintiff were made by defendant for the purpose of preventing plaintiff from selling its said securities in the open market, which would have caused a further drop in the market price of such securities, to the prejudice of said Continental Illinois Bank and Trust Company affiliated with the defendant as aforesaid"; that on said date the securities were of great value in the open market but that both are now of no value.

The four counts are substantially the same except that in the first it is alleged the defendant had no opinion about the value of the two Insull securities, and as to whether plaintiff should sell them. In the second count the allegation is that the defendant had no knowledge about the securities; the third, that in its opinion plaintiff should not sell such securities, and in the fourth that defendant had no knowledge and did

not know as to the advisability of plaintiff selling such securities.

From the foregoing we think it appears that the substance of the allegations of the first, second and fourth counts of the declaration is that defendant had no opinion as to whether plaintiff should sell the two Insull securities—that defendant refused to give an opinion on this subject; and we think the fact that in each of these counts it is alleged that defendant did have an opinion but fraudulently said it had none, does not render defendant liable. There is no allegation in any of these three counts that would warrant us in holding it was the duty of the defendant to give plaintiff advice when requested.

The essential elements of an action for fraud and deceit were stated in *Johnston v. Shockey,* 335 Ill. 363, where it was said (366) : "An action for fraud and deceit must show six elements in order to afford relief: (1) The misrepresentation must be in form a statement of fact; (2) it must be made for the purpose of influencing the other party to act; (3) it must be untrue; (4) the party making the statement must know or believe it to be untrue; (5) the person to whom it is made must believe and rely on the statement; and (6) the statement must be material." It is a general rule of law that a false expression of opinion, even when acted upon by plaintiff, will not support an action for fraud and deceit, but there are well recognized exceptions to this rule. In a note in 35 L. R. A. 417, it is said: "The general rule is that a mere expression of opinion is not fraud. . . . There are, however, well defined exceptions to the rule. If the opinion is designedly false, or advantage is taken of the other party in a manner which is clearly oppressive without any negligence on the part of the latter, there may be fraud, although the statement is only in the form of an opinion."

In *Vulcan Metals Co. v. Simmons Mfg. Co.* (C. C. A.) 248 Fed. 853, it is said (p. 856): "The conceded exception in such cases (puffing, or dealers' talk) has generally rested upon the distinction between 'opinion' and 'fact'; but that distinction has not escaped the criticism it deserves. An opinion is a fact, and it may be a very relevant fact; the expression of an opinion is the assertion of a belief, and any rule which condones the expression of a consciously false opinion condones a consciously false statement of fact. When the parties are so situated that the buyer may reasonably rely upon the expression of the seller's opinion, it is no excuse to give a false one." And in *Reeves v. Corning,* 51 Fed. 774, it is said (p. 780): "There is no certain rule of law by the application of which it can be determined when false representations constitute matter of opinion or matter of fact. Each case must, in large measure, be adjudged upon its own circumstances." And in further discussing this question the court there also said (p. 781): "The recent case of *Dillman v. Nadlehoffer,* 119 Ill. 567, 7 N. E. Rep. 88, is exactly in point upon the proposition that representations regarding the validity of a patent right are matters of opinion, and not statements of fact, for the making of which a suit for rescission will lie. That was a suit to rescind a sale of patent rights on the ground of false and fraudulent representations in regard to their validity. The representations are set out in the opinion of the court as follows:

" 'The defendant represented to plaintiffs that said improvements were his own invention, and that the patents issued thereon were genuine and valid, and that they did not conflict with or infringe upon the patents or inventions of any one, and particularly those controlled by the Washburn & Moen Manufacturing Company and J. L. Ellwood, or their licensees.'

"The court held that these representations were matters of opinion, and not affirmations of fact, and that they did not constitute such fraudulent statements as were actionable in a court of equity in a suit for rescission."

Although in some of the authorities above referred to it is held that one who gives false information may in some situations be held liable in an action for fraud and deceit, yet we are of opinion that in the instant case no cause of action was stated in any of the three counts mentioned because defendant did not give an opinion, but refused to do so.

The sufficiency of count three presents a more difficult question. In that count it is alleged that when "plaintiff inquired of the defendant for the defendant's opinion" as to whether it was advisable for plaintiff to sell all of its $100,000 of securities, defendant stated "that it was defendant's opinion that plaintiff should not sell said Insull Utility Investments, Inc., debentures and Corporation Securities Co. of Chicago gold notes, but should retain them."

It is further alleged that this opinion was not an honest opinion, because defendant knew that practically all of the assets of the two Insull companies were pledged to banks, including the Continental Illinois Bank, and that defendant's fraudulent opinion was given "for the purpose of preventing the plaintiff from selling its said securities in the open market which would have caused a further drop in the market price of said securities, to the prejudice of the said Continental Illinois Bank and Trust Company affiliated with the defendant as aforesaid." To require defendant, under the facts as alleged, to advise plaintiff to sell its stock when to do so might injure the defendant, the bank, other stockholders, and probably the bank's depositors by causing "a further drop" in the market price of the Insull securities which were

held by the bank, would be going farther than any case that has been brought to our attention. Unfortunately most men are not too honest, but owing to the manner in which business has been conducted since the "time whereof the memory of man runneth not to the contrary," the law up to this time, in some business transactions, permits a certain quantum of lying between buyer and seller without penalty. This is often piously referred to as "puffing," "dealer's talk" or "opinion." "If we were all scrupulously honest, this would not be so; but, as it is, neither party usually believes what the seller says about his own opinions, and each knows it. Such statements, like the claims of campaign managers before election, are rather designed to allay the suspicion which would attend their absence than to be understood as having any relation to objective truth." *Vulcan Metals Co. v. Simmons Mfg. Co.,* 248 Fed. 853, 856.

The two cases which we think go farther than any others toward sustaining plaintiff's contention are *Medbury v. Watson,* 6 Metc. (47 Mass.) 246, and *Fottler v. Moseley,* 179 Mass. 295.

The *Medbury* case was an action to recover damages for alleged false and fraudulent affirmation by the defendant with reference to a certain tannery. There the plaintiffs were desirous of purchasing a tannery and inquired of defendant, Watson, as to where and on what terms the tannery could be purchased. Watson, for the purpose of defrauding plaintiffs, advised that Wasson had such a tannery which he would sell for $4,000, being the amount that he had paid for it. Plaintiffs purchased the tannery, paying $4,000 for it when, as a matter of fact, the owner had paid only $3,000 for the tannery and was willing to sell it for that amount. The court held Watson liable for $1,000, although he received nothing for what he did. The court there said (p. 259): "The action on

the case for deceit is one well known; and, for a long series of years, has been maintained in the English courts. It has also been sustained by us as an efficient means for the punishment of frauds, and for the protection of the weak and the ignorant against the designs and artifices of the crafty.

"The leading case, in modern times (1833) on the subject of false affirmations made with intent to deceive, is that of *Pasley v. Freeman,* 3 T. R. 51, in which it was decided that a false affirmation made by defendant with intent to defraud the plaintiff, whereby the plaintiff received damage, was the ground of an action upon the case in the nature of deceit; and that it was not necessary that the defendant should be benefited by the deceit, or that he should collude with the person who received the benefit. . . .

"But in actions on the case for deceit, founded upon false affirmations, there has always existed the exception, that naked assertions, though known to be false, are not the ground of action, as between vendor and vendee; . . .

(p. 260) "but I presume I am safe in affirming, that the greater part, if not all, the cases cited, are those of false affirmation by the vendor to the vendee, where the maxim *caveat emptor* applies, and not those resting upon the false representations of a third person with regard to the value of the property. . . .

"In the present case, we think the averments in the declaration would not have supported an action, if the false representations had been made by the vendor to the vendee. But the representations were made by a third person, apparently disinterested." In that case the defendant, Watson, actively participated in bringing about the sale of the tannery from Wasson to plaintiffs. He did not merely give his opinion, as in the instant case. Moreover, the defendant in the instant case cannot be considered a disinterested third

party because its own assets according to the allegations of the declaration would have been detrimentally affected by the sale of plaintiff's securities.

In *Fottler v. Moseley,* 179 Mass. 295 (1901), plaintiff sued defendant, a stockbroker, for deceit charging that defendant stated that certain sales of stock of a corporation were genuine transactions when, as a matter of fact, they were not; that plaintiff, relying upon such representations, revoked an order which he had given to the defendant to sell plaintiff's stock, and thereby suffered loss. In that case the defendant stated as a fact that what purported to be genuine sales of stock were bona fide sales, when as a matter of fact they were fictitious sales, and the defendant was held liable. In the instant case the defendant but gave its opinion that plaintiff should not sell its Insull securities. Nor was there any contention in the *Fottler* case that defendant would have been damaged if plaintiff's order to him to sell the stock had been carried out.

The judgment of the circuit court of Cook county is affirmed.

*Judgment affirmed.*

McSURELY, J., specially concurring: I concur in the above with the added comment that if all the wrong prognostications concerning stocks made in recent years were actionable, most of the population would be in the courts.

MATCHETT, J., dissenting: I think the third count stated a good cause of action. I am not impressed with the doctrine that one who owes a duty to speak the truth is not obligated to do so because it would hurt him.