**JOHNSON v. BREWER–TITCHENER CORPORATION.**

District Court, N. D. New York.
July 27, 1939.

Carl E. Dorr, of Syracuse, N. Y. (Ross W. Shumaker, of Toledo, Ohio, of counsel), for plaintiff.

Clayton R. Lusk, of Cortland, N. Y. (David S. Kane, of New York City, and William J. Herron, of Malone, N. Y., of counsel), for defendant.

BRYANT, District Judge.

Action for damages for alleged rescission of contract tried without jury. Verdict for plaintiff.

On or about December 1, 1936, plaintiff and defendant executed an exclusive patent license agreement whereby plaintiff granted to defendant sole right to make, use, sell, etc., brake lever assemblies invented and owned by him, embodying the inventions set forth in application for Letters Patent, No. 94640, filed August 6, 1936, with all rights embodied in a subsequent application filed and any rights that might be acquired through future applications, and defendant, in consideration of said grant, paid plaintiff $2,500 and agreed to pay additional sums of $2,500 on the first day of April, July and October, 1937. The agreement contained provisions for royalty payments but they are not involved here. The agreement gives defendant the right to cancel or revoke at any time subsequent to October 1, 1937. Other parts of the agreement will be mentioned later.

Both parties entered into the performance of the agreement. On March 31, 1937, the day before the first installment became due, defendant rescinded. The basis for rescission was that plaintiff had orally, and in the license agreement, made misrepresentations in reference to the nature of the claims, their patentability, the action taken thereon, etc. Defendant also contends that plaintiff failed to perform.

Upon the trial, I allowed in evidence the conversations preceding the making of the formal agreement with the reserved right to strike out upon my own motion. I see no necessity to rule thereon because my decision will be the same with the testimony in or out.

■ Defendant has failed to justify its rescission on the ground of fraud or misrepresentation. The agreement was drafted by Mr. Illmer, a patent attorney and graduate mechanical engineer of many years experience, who was, and for a long time has been, in charge of patent matters for defendant. It should be strictly construed against defendant.

■ On this phase of the case, one of defendant's grounds is that plaintiff stated his invention was "basic and of broad scope, new and patentable" and that such statements induced defendant to make the contract. The evidence shows the invention was patentable. There was a sharp dispute over the use of the words "basic, new and of broad scope". I believe defense witnesses mistaken in their recollection of conversations on this point. If these words had been used and were as important as defendant imports, it seems strange that defendant did not include them in the agreement. It was not from lack of knowledge and experience because defendant's officers and its patent attorney and engineer were familiar with levers and patents. It is more logical to say that these expressions, if stated, were not relied upon and formed no basis of the contract. Representations of validity, scope, newness, usefulness, etc., of patents are considered expressions of opinion and usually, even though false, will not furnish grounds for rescission. Especially is this the fact where the vendee is capable of judging. Here the vendee was. Its engineers were given opportunity to examine the working model.

This gave them more knowledge than drawings could. The prior art was open to them. Defendant was not catapulted into the agreement. It is apparent that vendee's reliance on these alleged words was an after thought. The contract provides protection for vendee in case of suit for infringement. This belies alleged reliance on oral statements. On this point Reeves v. Corning et al., C.C., 51 F. 774 seems to support plaintiff.

█ Defendant also laid stress upon the alleged falsity of the statement, in the "whereas" clause of the agreement, that three of the claims of the patent "now stand as allowable". Subsequent happenings proved this statement to be true. Defendant in its attempt to justify rescission produced witnesses who testified that the words "stand allowable" are synonymous with the word "allowed" and mean official action, which had not at the time of the making of the agreement been had. From the evidence, I am satisfied that the defendant knew the situation, which was that the Patent Office had told plaintiff's attorney that at least three claims as amended would be allowed. It was the truth, for they were allowed. I am satisfied that Illmer knew this. Undoubtedly his knowledge accounts for the term used. Plaintiff is not chargeable with his use of inappropriate words to describe a known situation.

Plaintiff, by the agreement, bound himself to furnish assembly and detailed drawings. These he did together with working models. He never was requested to furnish more or other than he did. The paragraph provides that he should furnish those drawings "for a thoroughly perfected and commercially operable emergency brake lever that shall be suitable for low cost factory production on an extensive scale and acceptable as a marketable commodity to the automotive trade whose normal requirements exceed several million brake lever assemblies per year".

From the drawings and samples, defendant made one sales sample. It was never shown to plaintiff. A salesman of defendant took this sample and, from about February 1st, to March 15th, called on the chassis engineer of Pontiac Motor Co., Buick Motor Co., Olds Motor Works and the Dodge Truck Division of Chrysler Motor Co. One was not interested "at that time", two were not interested, and one made a test and found on "a direct push it would hold, on the question of a tap it would not hold, that is, it would give". There is nothing to show whether or not this is remediable nor whether it is important. No sales were made.

█ Because of no sales, defendant contends it had the right to rescind on the ground that plaintiff did not fulfill in that he did not furnish drawings for a lever as described in the above quoted description. I cannot hold that the above quoted part constituted any warranty. That part of the agreement is description or "puffing talk". In the strongest light it can be construed as nothing more than opinion. Defendant, a lever manufacturer with experience in the automotive trade, had the working models before it. Its president, factory manager and patent attorney, who is also a graduate and experienced mechanical engineer, were familiar with patents, their development and marketing. They had as much, if not more, knowledge of the commercial prospects than plaintiff. To say that these experienced men took any statements of future commercial success as a warranty is to belittle their intelligence and business acumen. They used their own judgment. If wrong they cannot complain. Moreover, the proof does not show the statements of the paragraph false. There is nothing to show the invention was not perfected and suitable for low cost factory production. I do not know what "commercially operable" means. The proof shows it was operable. Whether the lever would be a commercial success the proof does not show. Certainly the few unsuccessful efforts to sell does not establish that fact one way or the other.

I find that plaintiff fulfilled and that defendant breached the contract. Plaintiff is entitled to judgment on the first cause of action as demanded in the complaint.