CLARK, *Adm'r*, v. AMOSKEAG MANUFACTURING COMPANY.

The statute of limitations does not begin to run against a cause of action arising after an intestate's decease until an administrator is appointed.

An action lies in the name of the party with whom alone a written contract is expressly made, although, with the full knowledge of the other party, he is one of several partners in whose behalf he acts in making the contract.

In an action by a patentee to recover an agreed royalty for the patented articles manufactured and sold under his license, the defendant cannot question the validity of the patent.

One cannot complain of false representations by which he is not injured.

Assumpsit, to recover the royalty due under the following contract: "Memorandum of an agreement made between Edward Lindner, of New York, and E. A. Straw, agent of the Amoskeag Manufacturing Company, of Manchester, New Hampshire, to wit:

"The said Lindner, on his part, agrees that the said Amoskeag Manufacturing Company shall have the sole and exclusive right and privilege of manufacturing small-arms, carbines, and muskets under his patent, dated March 29, 1859, until the number made amounts to one hundred thousand pieces; and said Lindner further agrees that in the meantime no other party under his license shall introduce or sell a similar arm in the United States.

"The said Amoskeag Co., on their part, agree to use all reasonable effort on their part to manufacture the greatest number of arms in the shortest time, and will, if in their power to, produce them at the rate of fifty per day as early as the first of October next, and at the rate of five hundred per week as early as the first of December next, provided that in the meantime the sales of the arms, or the orders for them received from any responsible parties, will warrant the preparation for and the production of so large a number, it being understood that the arms are to be made in accordance generally with the order from the Ordnance Department, dated April 13, 1863, excepting that said Amoskeag Company shall have the right to vary the price of the carbines from the sum stated, in case any change in the value of materials and labor shall in their opinion render it necessary or expedient.

"The said Company further agree to pay to said Lindner or his order the sum of three dollars for each arm of his patent which they may manufacture and sell, but said Company are to make no payments to said Lindner or his order or assigns until after said Company shall have received pay for such arms as they may manufacture and sell, and then only in such funds as they may receive for such arms.   Manchester, N. H., June 13, 1863."

Writ dated March 19, 1880.

Plea, the general issue, with a brief statement of the statute of limitations and that the defendants were induced to enter into the contract by the false representations of Lindner that he was the sole owner of the patent, and could and did convey to them the sole and exclusive right to manufacture small-arms, carbines, and muskets; that there was a total failure of the consideration of the contract; and that the arms made by the defendants were not made under the contract.

Lindner died February 17, 1870, in Germany.   No steps were taken to administer his estate until the plaintiff was appointed administrator, August 26, 1879.

On the order of the Ordnance Department, referred to in the contract, the defendants manufactured 6,000 pieces under the patent, and, the United States government refusing to accept them, sold them, November 12, 1870, to an agent of the French government.

Dr. Katzenmeyer testified for the plaintiff, in substance, that at the date of the agreement he and his father owned one half of the patent and Lindner the other half; that they were partners with him in the contract, and were entitled to one half the profits or royalty, and liable for one half the losses; that he was present at all the negotiations between Straw and Lindner; that he fully informed Straw of his and his father's interest in the business, and of their partnership relations with Lindner; that he offered to sign the agreement, but that Straw said it was not necessary, and that Lindner's signature answered the purpose; that at the time of the trial, by reason of his father's death in 1867 and the assignment to him of Lindner's one half in 1869, the entire interest in the contract was vested in him.

The defendants moved for a nonsuit on the ground that the claim is a partnership claim and the suit must be in the name of the surviving partner, and that there is no evidence of any promise by the defendants within six years before the commencement of the suit. The court denied the motion, and the defendants excepted.

Prior to the contract with the defendants, Lindner gave a license to one Allen "to alter and sell altered guns or have them altered for himself [Allen] under Lindner's patent for the state of Massachusetts, and the right to alter guns within the state of Massachusetts and sell them in any of the states of the United States," and there was evidence tending to show that this was known to the defendants when they contracted with Lindner. There was no evidence tending to show that the defendants were ever interfered with, interrupted, or damaged by the license to Allen. The court ruled that it was immaterial whether the defendants at the time of the contract with Lindner knew of the license to Allen or not; and the defendants excepted.

The defendants claimed that the consideration for the contract had failed, and offered to show that the patent was invalid; that the device was copied from a patent issued by the English government before Lindner claimed to have invented it; that Lindner knew it was not a valid patent; and that they were induced to make the contract by his false representations that it was a valid patent; but they did not offer to show that they lost the sale of any guns by reason of the invalidity of the patent, or of Lindner's representations. The court rejected the evidence, and ordered judgment for the plaintiff; and the defendants excepted.

*H. S. Clark* and *A. F. Stevens*, for the plaintiff.

*Cross & Taggart* and *B. Wadleigh*, for the defendants.

CARPENTER, J. The motion for a nonsuit was properly denied. By the terms of the contract the defendants were not required to

pay the royalty until they sold and received payment for the arms. They did not sell until after Lindner's death. The original grant of administration was to the plaintiff in 1879. No cause of action accrued until his appointment, and the statute did not begin to run until that time. *Murray* v. *East India Co.,* 5 B. & Al. 204; *Fergusson* v. *Fyffe,* 8 Cl. & F. 121; *Hobart* v. *Conn. Turnpike Co.,* 15 Conn. 145; *Andrews* v. *Hartford &c. Railroad,* 34 Conn. 57; *Benjamin* v. *De Groot,* 1 Denio 151, 153; *Brewster* v. *Brewster,* 52 N. H. 52, 59. Assuming all the facts to be established which Katzenmeyer's testimony tended to prove, the action is properly brought in the name of the plaintiff. 2 Gr. Ev., *s.* 478; Bish. Con., *ss.* 360, 361, 392, 395; Coll. Part., *s.* 653; Sto. Ag. (6th ed) *ss.* 37, 160, *a.* 402, 403; *Doe* v. *Thompson,* 22 N. H. 217; *Chandler* v. *Coe,* 54 N. H. 561, 573; *Goodall* v. *Insurance Co.,* 25 N. H. 169, 187; *Sanders* v. *Insurance Co.,* 44 N. H. 238, 245.

The question whether the license to Allen was known to the defendants when they executed the contract was irrelevant. The license itself was immaterial in the absence of evidence that Allen acted under it.

Evidence of the invalidity of the patent was properly rejected. *Lawes* v. *Purser,* 6 E. & B. 930; *Noton* v. *Brooks,* 7 H. & N. 499; *Trotman* v. *Wood,* 16 C. B. N. S. 479; *Adie* v. *Clark,* 3 Ch. Div. 134; *Clark* v. *Adie,* 2 App. Ca. 423; *Kinsman* v. *Parkhurst,* 18 How. 289; *Springfield* v. *Drake,* 58 N. H. 19.

The evidence that Lindner knew the patent was invalid, and that the defendants were induced to make the contract by his false representations that it was valid, was not relevant to the issues tried, and was properly excluded. It had no tendency to show a failure of consideration, for which purpose alone it was offered. The consideration was, not the patent, but the right to manufacture arms under it. It does not appear, and no evidence was offered tending to show, that the defendants did not enjoy under the contract all the benefits and advantages which they could have obtained if the representations had been true, or that they were in any way damnified by the representations. They cannot complain of false statements which have caused them no injury. *Springfield* v. *Drake,* 58 N. H. 20, 21.

*Judgment for the plaintiff.*

STANLEY, J., did not sit: the others concurred.