EASTERN STATES PETROLEUM CO., INC., a corporation of the State of Delaware,

> Complainant,

*v.*

UNIVERSAL OIL PRODUCTS COMPANY, a corporation of the State of Delaware,

> Defendant.

UNIVERSAL OIL PRODUCTS COMPANY, a corporation of the State of Delaware,

> Cross-Complainant,

*v.*

EASTERN STATES PETROLEUM CO., INC., a corporation of the State of Delaware,

> Cross-Defendant.

*New Castle, May 14, 1938.*

*Christopher L. Ward, Jr.*, and *Arthur G. Logan*, of the firm of Marvel, Morford, Ward & Logan, for complainant and cross-defendant.

*Clarence A. Southerland*, of the firm of Ward & Gray, *Thomas G. Haight*, of Jersey City, N. J., and *William D. Whitney* and *Hugh A. Fulton*, both of New York City, for defendant and cross-complainant.

THE CHANCELLOR: The complainant will be herein referred to as Eastern and the defendant as Universal.

Universal is the holder of numerous United States Letters Patent covering what is called the Dubbs Cracking Process for the cracking of petroleum, tars, etc., generally described as oil. The basic patent is described by the bill as being United States Letters Patent No. 1,392,629.

On December 19, 1935, Universal and Eastern entered into an agreement by the terms of which the former granted to the latter a non-exclusive and non-assignable license to crack oil under all letters patent then or thereafter owned by Universal, upon the terms and conditions

therein mentioned, among which was a covenant by Eastern to pay royalties at the rates set forth in a schedule attached to the agreement.

Paragraph 10 of the agreement obligated Universal to protect and indemnify Eastern against all liability arising from any decree or judgment rendered against it in any suit brought against it by any other person, etc., for infringement of any patents, arising solely because of Eastern's operations under Universal's patents; and to conduct at its own expense Eastern's defense to any such suits, said defense to be under the sole charge and direction of Universal. Eastern, however, was entitled to be represented in such suits by its own advisory council and was obligated to render to Universal all such reasonable assistance in the conduct of such suits as Universal should require.

Eastern never paid any royalties as it agreed to do. Whereupon Universal instituted an action of covenant against Eastern in the Superior Court of this State, in which it sought recovery of $141,403.13, being the total of the royalties claimed by Universal to be due it under the license agreement.

Eastern claims that it was induced to enter into the license agreement by certain false representations made to it by Universal, that it is therefore entitled to insist that the agreement be held not to be binding upon it. A defense of this character, however, Eastern considers and Universal apparently agrees, cannot be set up in the action at law.

That being so, Eastern has come into this court with the pending bill and seeks thereby a decree cancelling and holding for naught the license agreement on the ground that it was induced to enter into the same because of said false representations, and for an injunction against the further prosecution by Universal of its action at law for royalties.

The defendant's demurrer goes to only a portion of the bill. The causes of demurrer are concerned in part with insufficiency in the manner of the bill's allegations—a criticism, which if valid, is susceptible of correction by amendment. I pass those grounds by, because, as I view the law, there is a ground of demurrer raised by the defendant which, as a matter of substance as distinct from mere insufficiency of allegation, renders the portion of the bill to which the demurrer is directed open to fatal objection.

I now proceed to consider the substantial aspects of the demurrer.

The representations which the bill relies on as entitling Eastern to a cancellation of the agreement consist in this—that prior to entering into the agreement Universal represented to Eastern in brief that (a) the inventor of the process covered by its basic patent (one Dubbs) was the first, sole, true and original inventor of the process disclosed therein; (b) that the patent had been validly issued; (c) that said process was new and useful at the time application was made for the patent; (d) that said process had not been known or used by others in this country and had not been patented or described in any printed publication in this or in any foreign country before Dubbs' alleged invention or discovery thereof for more than two years prior to his application for United States Letters Patent; (e) that no application for any foreign patent covering said process had been filed more than twelve months prior to the application by Dubbs in this country; (f) that the alleged improvements in said patent had not been in public use or on sale in the United States for more than two years prior to Dubbs' application; (g) that the invention had not been abandoned to the public; and (h) that by entering into said license agreement and using the Dubbs process, Eastern would not infringe on any other oil cracking process and would have complete patent protection in its business of cracking oil—all of which representations

are alleged by the bill to have been in truth and in fact substantially false and were known by Universal to be false.

It will be observed that these alleged representations embrace very many of the particulars which an invention must satisfy in order to be patentable. It would be, I dare say, rather unusual for the holder of a patent to enumerate by specific recitation all such particulars as these as true with respect to his patent. The bill does not say whether the representations were made item by item, or whether they were blanketed so to speak by a general representation that the patent was a valid patent.

After all, even if the rather unusual thing occurred of the licensor's detailing the items of representation one by one, it amounted to no more than this—that the licensor represented that the patents covering the process were valid patents. So that for practical purposes we may consider the case as though it were one where the owner of a patent represented generally to a proposed licensee that the patent was a valid one, and because of such representation the licensee entered into the agreement.

Now in such a case is it permissible for the licensee to show that the patent was in fact invalid for any one or more of the numerous reasons which may invalidate a patent, and, having so shown, to secure a decree cancelling the license agreement? That is the question which the demurrer raises.

It is a general proposition of law that in order for a false representation to be such as to warrant rescission, it must be of a fact as distinguished from a mere expression of opinion. Frequently a statement may be in the form of a fact when in reality it is but one of opinion; and the converse may likewise be true. 5 *Williston on Contracts,* (1937) §§ 1491, 1494.

"*Prima facie,* a patent duly issued under the seal of the patent office is valid." *Huber, et al., v. Guggenheim,*

*et al., (C. C.)* 89 *F.* 598, 601. The parties to a license agreement assume the patent to be valid. *Ball & Socket Fastener Co. v. Ball Glove Fastening Co.*, (1 *Cir.*) 58 *F.* 818, 822. The mere ownership of letters patent and the granting of a license thereunder would constitute, without more, an implied representation by the licensor to the proposed licensee that that is true which the existence of the letters as a matter of presumption proclaims, viz., that the patent is valid in all respects. If in this case there was a detailed recitation by the licensor of the particulars by which validity would be demonstrated (with respect to which the bill is not clear), the fact would not seem important, for I do not see how representations lose any of their character as such by being implied by the law or gain any more of effectiveness by being put in affirmative words.

Let it be considered than that representations of the character specified were made, either by implication or by express language—how does the law regard them? Are they to be treated as representations of fact or as mere expressions of opinion? They are to be treated as the latter and the licensee to whom they were made is not entitled to rely on them as a ground for avoiding the licensing agreement. In the case above cited from 89 *F.*, Judge Lacombe observed that,

"Whether or not the prior state of the art is such as to overthrow the presumption arising from its [the patent's] issue is a question about which opinions may fairly differ. The construction of the patent is a question of law, and whether an article infringes or not depends upon that construction. * * * The representations set forth in the bill [as to the validity of the patent] are expressions of opinion."

Other cases to the same effect are the following: *Reeves v. Corning, (C. C.)* 51 *F.* 774; *Dillman v. Nadlehoffer*, 119 *Ill.* 567, 7 *N. E.* 88. It is true that in the *Reeves Case* there was a clause expressly warranting the validity of the patent and the court referred to that fact as showing that the licensee placed no reliance on the representations as an

inducement for his entering into the agreement. But this point in the opinion is concerned only with showing that the representations were not relied on as an inducement. It leaves undisturbed the court's conclusion that the representations were in essence only an expression of opinion which is the point for which I cite the case. The *Dillman Case* from Illinois may also be thought to be distinguishable because the agreement in that case contained a clause by which the licensor expressly refused to warrant the patent's validity. But this clause was referred to only as corroborative of the court's view, otherwise arrived at, that antecedent representations of validity were mere expressions of opinion and not representations of fact.

In the instant case there is a clause which guarantees to protect Eastern against all liability in case the licensee is ever adjudged liable in an infringement suit because of its use of the licensor's patents. This clause, as is the warranty clause in *Reeves v. Corning, supra,* and the corresponding clause in *Huber, et al., v. Guggenheim, supra,* is confirmatory of the view that the representations of validity were not representations of fact upon which Eastern relied as an inducement to entering into the license agreement.

In 1 *Black, Rescission and Cancellation,* (*2d Ed.*) § 83, it is said that representations by a licensor to the effect that his patent is valid are to be treated as expressions of opinion, and not as statements of fact on which a suit for rescission could be based, "unless it appears that there was a prior patent covering the identical invention and that the seller (licensor) was aware of it." The complainant relies on the quoted clause as authority to sustain the proposition as a general one that in a suit to rescind a contract of license under a patent, representations of validity may always be treated as representations of fact and not merely as expressions of opinion. The quotation does not so state. The exception to the general rule is the very

narrow one of an existing prior patent covering the identical invention. Black's language is apparently paraphrased from some *dictum* in *Reeves v. Corning, et al.*, (*C. C.*) 51 *Fed.* 774, 780. But in that case, it is to be noted, the representations were held to be mere expressions of opinion, notwithstanding there was a prior patent which it was claimed was in interference with the one in question, though the Patent Office had issued the one in question in face of the existing one. In the instant case there is no allegation of a prior patent sufficiently identical with the one held by Universal to warrant the application of the exception suggested by Black in the above quoted clause.

Aside from the foregoing, there is yet another and equally convincing reason why the demurrer should be sustained; and that is that Eastern is estopped to deny the validity of the patents under which it took its license. Where a licensee takes a license to work a patent for which letters patent have been duly issued, receiving the benefits of the agreement including immunity from molestation by the owner on the ground of infringement, it is highly inequitable that he should be permitted to escape the obligation to pay the royalties which he stipulated he would pay in consideration for the granted immunity. It was so held in the leading case of *Kinsman, et al., v. Parkhurst*, 18 *How.* 289, 15 *L. Ed.* 385. The doctrine of that case has been uniformly recognized and accepted without a single dissent, so far as my investigations show, in subsequent cases in the federal and state jurisdictions in this country and in England. Among the cases sustaining the doctrine are the following: *Dale Tile Mfg. Co. v. Hyatt*, 125 *U. S.* 46, 8 *S. Ct.* 756, 31 *L. Ed.* 683; *United States v. Harvey Steel Co.*, 196 *U. S.* 310, 25 *S. Ct.* 240, 49 *L. Ed.* 492; *H. C. White Co. v. Morton E. Converse & Son Co.*, (2 *Cir.*) 20 *F. 2d* 311; *United Engineering & Foundry Co. v. Cold Metal Process Co.*, (3 *Cir.*) 68 *F. 2d* 564; *Marston v. Swett*, 66 *N. Y.* 206, 23 *Am. Rep.* 43; *Id.*, 82 *N. Y.* 526; *Hyatt v.*

*Dale Tile Mfg. Co.*, 106 *N. Y.* 651, 12 *N. E.* 705 (more fully reported in the margin of 125 *U. S.* 46, 8 *S. Ct.* 756 and there approved) ; *Illinois Watch Case Co. v. Ecaubert*, 177 *Ill.* 587, 52 *N. E.* 861; *Ferry-Hallock Co. v. Progressive Paper Box Co.*, 76 *N. J. Eq.* 1, 73 *A.* 230; *Jones, et al., v. Burnham*, 67 *Me.* 93, 24 *Am. Rep.* 10; *Clark v. Addie*, [1877] *App. Cas.* 2 *L. R.* 423.

In *Jones, et al., v. Burnham, supra,* decided by the Supreme Judicial Court of Maine in 1877, the doctrine of estoppel was so rigidly adhered to that the court applied it even though the patent had been adjudicated to be invalid by the Supreme Court of the United States. Whether an adjudication of invalidity in a court having jurisdiction to try the validity of a patent, would be equivalent to an eviction and therefore release the licensee from the bar of the estoppel otherwise existing against him, is a question which the Maine court answered in the negative. In the light of more modern authority, it may be doubted whether *Jones, et al., v. Burnham, supra,* in that branch of its holding, would be sustained. See *Ross v. Fuller & Warren Co., (C. C.)* 105 *F.* 510, and 1 *Walker on Patents,* (1929) § 355.

But in the instant case, there is no occasion to consider the question of what constitutes an eviction and, if one, the effect thereof on the right of the licensor to insist on payment of the royalties by the licensee. As a matter of fact, according to the bill's allegations, an interference was at one time pending in the Patent Office between the basic Dubbs patent owned by Universal and a patent owned by The Texas Company covering a process for cracking oil known as the Beheimer process. The interference controversy was adjusted in the Patent Office and Universal's basic patent was duly recognized as valid. There has, then, been no eviction in any proceedings in the Patent Office; neither has there ever been a judicial adjudication of invalidity by any court anywhere.

Eastern alleges that deception of some sort was practiced by Universal and The Texas Company upon the Patent Office and as a result of the fraud there perpetrated the Patent Office was induced in substance to validate Universal's claims. In other respects Eastern contends that Universal's letters patent were not lawfully issuable and are therefore invalid. I shall not burden this opinion with a recital of those other particulars. Let them all be well founded in fact, yet Eastern is estopped from showing them as a basis for cancelling its agreement to pay the royalties.

Universal's patents have at no time been declared invalid. Indeed so far as the bill shows, they have never been challenged in any infringement suit, and so far as appears the whole world has acquiesced in the validity of the patents under which Universal licensed Eastern. That being so, the situation of Eastern is the same to all intents and purposes as if the patents had been sustained by the Supreme Court. *Huber v. Guggenheim, supra.* Eastern has thus enjoyed the full benefit of the patents as fully as if their validity had been formally adjudicated so far as potential infringers are concerned and has enjoyed the benefit of immunity from suit by Universal for infringement and consequent accounting, which if successful would subject it to an injunction and monetary liability in substantial amounts. Its agreement to pay royalties is the consideration it gave to be relieved by Universal from possible consequences of so serious a nature. Having received all the benefits and obtained in fact all it bargained for, it is estopped from denying the predicate from which the benefits flowed.

But Eastern says it has repudiated the agreement and is therefore free to contest the validity of the patents. The answer to this is, that it is beyond the power of a licensee to revoke the agreement except by the consent or fault of the other party, neither of which is shown. *St. Paul Plow*

*Works v. Starling,* 140 *U. S.* 184, 186, 11 *S. Ct.* 803, 35 *L. Ed.* 404.

Universal urges that in this case Eastern is seeking by a bill for cancellation to draw the question of the validity of Universal's basic patent before this court for adjudication and that there is no jurisdiction in the State tribunals to try that question. Eastern replies by saying that such is not the correct view of the matter, for the suit here does not arise out of the patent but out of a contract. Authorities are cited to show the distinction. I do not pause to examine when and under what circumstances patents, their interpretation and scope, may be examined as collateral to suits arising out of contracts. The examination would be purely academic in this case, because as hereinbefore stated, Eastern is estopped to show that the patent is invalid for any one of the several causes it alleges, even if this court had jurisdiction otherwise to entertain the inquiry.

The demurrer to the portion of the bill to which it is directed should be sustained.

I now turn to the demurrer to the cross-bill. Universal by its cross-bill seeks a decree requiring Eastern specifically to perform its royalty obligations and to pay the sum found due thereunder.

To the cross-bill Eastern has demurred on the ground that Universal has an adequate remedy at law in an action to recover the royalties claimed to be due.

The cross-complainant relies on the principle that equity having jurisdiction of a cause will proceed to do complete justice between the parties even though in doing so matters for which an adequate remedy at law exists might be drawn before the court for decision. *Scotton, et al., v. Wright, et al.,* 13 *Del. Ch.* 214, 232, 117 *A.* 131, 139.

If the demurrer to the bill in this case were to the whole bill, I would sustain the demurrer to the cross-bill;

for the bill is one to enjoin an action at law and if it was not maintainable in its entirety I can see no reason why the action at law which it seeks to enjoin should not proceed.

But Universal has answered the bill in part, tendering an issue upon whether a representation, which both parties treat as one of fact, was made as an inducement to the contract in respect of a matter which Eastern is not estopped from denying.

The cause is, therefore, to be retained before the court. That being so, the cross-bill should likewise be retained. The demurrer to the cross-bill will therefore be overruled.

Order in accordance with the foregoing.