LANOVA CORPORATION, a Corporation of the State of Delaware, v. ATLAS IMPERIAL DIESEL ENGINE CO., a Corporation of the State of Delaware.

*(September* 24, 1947.)

CAREY, J., sitting.

*Hugh M. Morris* and *S. Samuel Arsht* (of the firm of Morris, Steel, Nichols and Arsht), (*Denis B. Sullivan, Arthur H. Boettcher* and *David B. Coxe, Jr.,* of counsel) for the plaintiff.

*Caleb S. Layton* (of the firm of Richards, Layton and Finger), (*Oscar A. Mellin,* of counsel) for the defendant.

Superior Court for New Castle County, Nos. 75 and 184, November Term, 1946.

CAREY, J.:

Originally, the plaintiff sought to raise the present issues by a motion to strike the pleas. The Court (Carey, J., sitting) held the motion to be improper because it can not be allowed to take the place of a demurrer. 1 *Woolley Del. Prac.* 308. Upon the state of this record, the proper pleading is demurrer. If the defendant is estopped to deny the validity of the patents, that estoppel appears from matter contained in the declaration. See *Brady v. Delaware Mutual Life Ins. Co.*, 2 *Penn.* 237, 45 *A.* 345.

Although the special demurrer raises certain formal objections, I prefer to turn immediately to the more important substantive contention. The plaintiff relies upon the rule set forth in *Eastern States Petroleum Co. v. Universal Oil Products Co.*, 22 *Del. Ch.* 333, 2 *A.* 2d 138, wherein Chancellor Wolcott held that a licensee is estopped to deny

the validity of patents included in the license. This holding was approved by our Supreme Court in *Id.*, 23 *Del. Ch.* 358, 8 *A.* 2d 80. Nobody would suggest that this Court has the power to overrule a principle of law laid down by our State Supreme Court. On the other hand, in matters subject to federal regulation, State Courts must bow to the authority of the Supreme Court of the United States. *Van Winkle v. State*, 4 *Boyce* 578, 91 *A.* 385, *Ann. Cas.* 1916 *D*, 104. The patent and anti-trust laws being substantive matters within the federal jurisdiction, our present ruling would have to be controlled by the principles laid down by the United States Supreme Court if, as defendant contends, those principles overrule the Universal case in its application to the present factual situation.

■ ■ It is necessarily conceded that the so-called limitation in this license agreement is valid if the patents are valid. *General Talking Pictures Corp. v. Western Electric Co.*, 305 *U. S.* 124, 59 *S. Ct.* 116, 83 *L. Ed.* 81. The owner of a patent need not allow anyone to use it for any purpose. Clearly, if he does permit someone to use it, he may impose any lawful restrictions upon the privilege. Moreover, he may limit its use to "one or more of the several fields of use"; he is not forced to permit an all-inclusive use. This principle is too well settled to deny. But, says the defendant, when the license is not based upon a valid patent, then a restriction of this nature is nothing more than attempt to deprive the licensee of a privilege he already has, namely: the right to use the process for any lawful purpose whatever. Such an unauthorized limitation, it says, is an unwarranted restraint upon the free flow of goods into interstate commerce and therefore violates the anti-trust laws. In such circumstances, it argues, the estoppel doctrine does not apply, according to certain recent Federal Supreme Court decisions.

It would be useless to discuss here the weighty reasons underlying the estoppel rule as it applies to patent licenses. The doctrine has been almost universally followed in this country, at least until very recently, in both State and Federal Courts. *Eastern States Petroleum Co. v. Universal Oil Products Co., supra; Kinsman v. Parkhurst,* 18 *How.* 289, 15 *L. Ed.* 385; *United States v. Harvey Steel Co.,* 196 *U. S.* 310, 25 *S. Ct.* 240, 49 *L. Ed.* 492. Even in many of those few cases where it has given way to some overpowering public policy, strong dissent was heard.

Probably the earliest instance in which the United States Supreme Court refused to follow the estoppel doctrine is *Sola Electric Co. v. Jefferson Electric Co.,* 1942, 317 *U. S.* 173, 63 *S. Ct.* 172, 174, 87 *L. Ed.* 165. There the license agreement contained a covenant to maintain a fixed price. Jefferson sought a recovery for unpaid royalties as well as an injunction against further sales by Sola, except in conformity with the terms of the price-fixing agreement. The Court pointed out that price-fixing is made illegal by a federal statute, unless based upon a valid patent, and that such a statute takes precedence over local rules of law. It held that the rule of estoppel must yield to the act's declaration of illegality of a price-fixing contract, and "to the public policy of the Act which in the public interest precludes the enforcement of such unlawful agreements". The Court expressly refused to consider the applicability of *Kinsman v. Parkhurst, supra,* and *United States v. Harvey Steel Co., supra,* indicating that the only question presented was "whether the doctrine of estoppel as invoked below is so in conflict with the Sherman Act's prohibition of price-fixing that this Court may resolve the question even though its conclusion be contrary to that of a state court".

The Court later had occasion to review and explain

its ruling in the Sola case in two actions decided in January 1947, towit, *Edward Katzinger Co. v. Chicago Metallic Mfg. Co.*, 329 *U. S.* 394, 67 *S. Ct.* 416, 420, 424 and *MacGregor v. Westinghouse Electric & Mfg. Co.*, 329 *U. S.* 402, 67 *S. Ct.* 421, 424. They both involved price-fixing licenses. The Court held that the Sola doctrine will be applied even where the action is only to recover unpaid royalties and that it is not restricted to instances where injunctive relief is sought. In the Katzinger case, it was said that the Sola decision was "grounded upon the broad public interest in freeing our competitive economy from the trade restraints which might be imposed by price-fixing agreements stemming from narrow or invalid patents". Here again, the Court refused to discuss *Kinsman v. Parkhurst* and *United States v. Harvey Steel Co.*, stating that " 'No price-fixing stipulation was involved in the license contract' at issue in those cases". The Court seems to have limited its ruling to price-fixing cases by these words: "Under what other circumstances a federal rule of estoppel might be applied is a question which can be met when particular facts present it".

In *Scott Paper Co. v. Marcalus Mfg. Co.*, 1945, 326 *U. S.* 249, 66 *S. Ct.* 101, 90 *L. Ed.* 47, it was held that the patent laws themselves preclude an assignee of a patent from invoking the estoppel doctrine against the assignor, where the patent in reality includes nothing more than the prior art invention of an expired patent, which anticipated the assigned patent. The Court pointed out that the public had, by granting a monopoly for a limited time, paid a consideration for the free use of the invention, and that no one can by contract deprive the public of the benefits of such free use. Likewise, estoppel can not be used to evade the statutory regulations which forbid a monopoly to continue beyond a definite period of time. No consideration was given to any question of restraint of trade or

competition. The sole basis for the decision was the public interest in the use of the expired patent. It is doubtful, therefore, whether this decision has much bearing upon the present case.

■ It will be observed that the majority opinions in the Sola, Katzinger and MacGregor cases carefully limited their effect to price-fixing covenants. In them, the all-important considerations was the conflict between a positive statutory prohibition and the estoppel doctrine, the statutory rule being based upon public interest and the estoppel doctrine being of concern only to the parties. I take it, then, that the estoppel principle still retains its full vigor where no statute or broad public interest conflicts therewith.

The defendant, of course, contends that the present license does offend the statute, in that the patents included therein are invalid and the contract in effect prohibits the defendant from using the art to manufacture certain kinds of engines. The strength of this argument depends, in my opinion, upon the interpretation, meaning or effect of the contract.

In form, at least, the license contains no prohibition. The defendant has not covenanted not to incorporate the art in certain engines. Actually, assuming validity of the patents, it has received something which it did not own before, namely, the right to use them in making the smaller engines. If the patents are invalid, nothing save the estoppel principle prevents the defendant from using them on any kind of engines without cost; it would then have exactly the same right as if no contract had been signed. The estoppel doctrine, in and of itself, does not bar the defendant from using the device in the larger engines; its right to do that depends solely upon the validity of the patents. Furthermore, it is not so barred by the license itself; the contract merely does not give that right. If the defendant

should use the patents over and above the limitation, the plaintiff would have no remedy under the contract but could sue for infringement. The success of its suit would depend solely upon the validity of the patents, and in that case estoppel could play no part because the action would involve a matter entirely beyond the scope of the contract.

█ The relationship created by patent licenses is closely analogous to that of landlord and tenant with reference to estoppel. It may therefore be helpful to illustrate the present point by the example of a lease. Let us say that A claims ownership of two adjoining houses. He leases house number 1 to B. However, B takes possession of both houses. Now, B cannot deny A's title to house number 1 but he could do so with respect to house number 2. As to house number 2, A has no action against B on the lease agreement for it is not included in the lease. His action would be trespass or ejectment, which B could defend by denying A's title. 32 *Am. Jur.* 113. The situation is the same here. Lanova sold Atlas a limited right and the territory beyond that limit is not within the contract. *General Talking Pictures Corp. v. Western Electric Co., supra.*

█ It follows from what has been said that the only thing which the defendant has given up by signing the license is its promise to pay royalties for the use of the patents in making engines within the license limits. The contract itself does not restrain it from doing anything which it could not have done otherwise; in effect, the license merely binds the defendant to pay for a limited use without fear of being sued for infringement. I see nothing in such a state of facts to warrant a holding that the contract unduly restrains trade or competition. No broad public interest and no positive statutory prohibition exist to which the estoppel principle must yield in this case. In my opinion, the rule announced by Chancellor Wolcott in the Universal

Oil case, supra, applies to these parties, there being no factor in the case bringing it within the exceptions discussed in the more recent federal cases cited by defendant.

■ It may be suggested that a restriction of this nature in a license implies a negative covenant. No doubt this is true in many types of contracts where the very nature of the restriction necessarily implies such a covenant. The authorities indicate however, that this is not true with respect to limitations similar to the present one. *Wood v. Wells, Fed. Cas. No.* 17967; *Magic Ruffle Co. v. Elm City Co., Fed. Cas. No.* 8,949. The distinction seems also to have been recognized in *Pope Mfg. Co. v. Owsley, D. C.,* 27 *F.* 100, where there was an express covenant not to go beyond the restriction and it was held that the licensee was guilty of a breach of the contract in addition to an infringement of the patent.

In view of this finding, it is unnecessary to determine the subsidiary question of whether Lang's alleged fraud in procuring a patent not involved in the suit had the effect of vitiating the patents which were sued upon.

The demurrers will be sustained in each case.