IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| RICK HENRICUS VAN DEN WILDENBERG, | § § § | No. 97, 2025 |
| Plaintiff Below, Appellant, | § § § | Court Below: Court of Chancery of the State of Delaware |
| v. | § § | C.A. No. 2024-0399 |
| SIGN-ZONE HOLDINGS L.P., a Delaware Limited Partnership, SIGN-ZONE HOLDINGS GP DE L.L.C., a Delaware limited liability company, SHOWDOWN DISPLAYS EUROPE B.V., PFINGSTEN PARTNERS FUND V, L.P., and PFINGSTEN PARTNERS FUND V-A, L.P., | § § § § § § § § § § | |
| Defendants Below, Appellees. | § § | |

Submitted: September 17, 2025
Decided: October 17, 2025

Before **SEITZ**, Chief Justice; **VALIHURA**, and **LEGROW**, Justices.

## <u>ORDER</u>

After consideration of the parties' briefs and the record on appeal, it appears to the Court that:

(1) Rick Henricus van den Wildenberg ("Wildenberg") appeals the Court of Chancery's dismissal of his complaint for negligent misrepresentation. The court held that the complaint failed to allege either a false statement of fact or the omission

of a material fact in the face of a duty to speak.[1] We affirm the dismissal of the complaint.

(2)     Wildenberg became an investor and limited partner in Sign-Zone Holdings, L.P. ("Sign-Zone") in 2019.  In April 2021, Sign-Zone initiated a capital financing round.  In inviting Wildenberg to participate, Sign-Zone provided him with a "Unitholder Presentation" showing a sharp decline in the company's performance in 2020 and warning that substantial existing debt would need to be repaid before any new equity would have value.  The presentation included three financial projections—an "Extended Recovery Case" projecting 2023 EBITDA of $10,100,000, a "Base Case" of $15,800,000, and an "Upside Case" of $22,480,000. When Wildenberg's financial adviser spoke with Sign-Zone's CEO, the CEO stated that the company was facing a difficult situation and "purportedly had bad projections for future performance."[2]  In light of this pessimistic information—and having already made a substantial prior investment in the company—Wildenberg declined to participate in the April 2021 financing.

(3)     Over the next several years, Sign-Zone's actual financial results exceeded even the most optimistic projections in the Unitholder Presentation.  In 2024, Wildenberg learned that, at the time of the 2021 capital raise, Sign-Zone's

---

[1] *van den Wildenberg v. Sign-Zone Holdings, L.P.*, 2025 WL 354975, at *1 (Del. Ch. Jan. 31, 2025) [hereinafter the "Opinion"].

[2] App. to Appellant's Opening Br. at A016.

management and other limited partners had access to a Quantitative Impairment Analysis (dated as of December 31, 2020) that painted a significantly more optimistic picture of Sign-Zone's prospects than the Unitholder Presentation. For example, the Quantitative Impairment Analysis projected 2023 EBITDA approximately 31% higher than the Unitholder Presentation's "Base Case" ($20,740,000 million versus $15,800,000 million). Wildenberg also discovered that all other limited partners had already committed their pro rata portions of the capital infusion before he was asked to invest. Concluding that Sign-Zone had provided him an unduly pessimistic and incomplete financial portrait—causing him to forgo a profitable investment opportunity—Wildenberg filed suit in April 2024.

(4) Wildenberg's complaint asserted two counts of negligent misrepresentation against Sign-Zone and affiliated defendants. The defendants moved to dismiss under Court of Chancery Rule 12(b)(6), and the court granted the motion, dismissing the complaint in full. We review a dismissal under Rule 12(b)(6) *de novo*, accepting well-pleaded factual allegations as true and drawing all reasonable inferences in the plaintiff's favor to determine whether the complaint states a legally cognizable claim.[3]

---

[3] *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 610 (Del. 2003) (citing *In re Santa Fe Pac. Corp. Shareholder Litig.*, 669 A.2d 59, 70 (Del. 1995)).

(5) To state a claim for negligent misrepresentation, a plaintiff must plead with particularity that: (i) the defendant owed a duty to provide accurate information based on the plaintiff's pecuniary interest in that information; (ii) the defendant supplied false information; (iii) the defendant failed to exercise reasonable care in obtaining or communicating the information; and (iv) the plaintiff suffered a pecuniary loss caused by justifiable reliance on the false information.[4] The Court of Chancery held that Wildenberg's complaint failed to satisfy the second element because it did not allege either a false statement of fact or an omission of a material fact that the defendants were under a duty to disclose.[5]

(6) On appeal, Wildenberg principally contends that Sign-Zone fraudulently omitted material information—namely, the more optimistic 2023 EBITDA forecast contained in the Quantitative Impairment Analysis—when soliciting his investment. Delaware law recognizes that fraud may arise not only from affirmative misrepresentations but also from silence in the face of a duty to

---

[4] Ct. Ch. R. 9(b) (imposing a heightened pleading standard for misrepresentation claims); *Neurvana Med., LLC v. Balt USA, LLC*, 2020 WL 949917, at *24 (Del. Ch. Feb. 27, 2020) (quoting *H-M Wexford LLC v. Encorp, Inc.*, 832 A.2d 129, 147 n.44 (Del. Ch. 2003)) (discussing the elements of common-law misrepresentation). Equitable fraud "requires proof of all of the elements of common law fraud except 'that plaintiff need not demonstrate that the misstatement or omission was made knowingly or recklessly.'" *Williams v. White Oak Builders, Inc.*, 2006 WL 1668348, at *7 (Del. Ch. June 6, 2006).

[5] Opinion at *3.

speak or from omission of material facts.[6]  One such duty to speak arises when the party learns of *subsequently acquired information* that the party knows will render a prior statement untrue or misleading.[7]  Here, however, the Quantitative Impairment Analysis was not "subsequently acquired" information; it was prepared *before* the Unitholder Presentation and Sign-Zone's communications with Wildenberg. Because the analysis predated any representation made to Wildenberg, Sign-Zone had no duty to disclose it on that basis.

(7)     Nor did the failure to disclose the Quantitative Impairment Analysis amount to an omission of a material fact.  Although projections are forward-looking and may at times constitute "soft information" that does not need to be disclosed, projections can, in some circumstances, constitute the type of hard data that must be disclosed.[8]  The determination turns on the information's reliability and materiality.[9]

---

[6] *Stephenson v. Capano Development Inc.*, 462 A.2d 1069, 1074 (Del. 1983); *Nicolet, Inc. v. Nutt*, 525 A.2d 146, 149 (Del. 1987).

[7] *In re Wayport, Inc. Litig.*, 76 A.3d 296, 323 (Del. Ch. 2013) (quoting Restatement (Second) of Torts § 551 (1997)) (emphasis added).

[8] *See Zirn v. VLI Corp.*, 681 A.2d 1050, 1057–58 (Del. 1996) (recognizing that "soft information," such as asset valuations or income and cash-flow projections, must be disclosed only when its reliability and materiality outweigh the potential for shareholder confusion); *Weinberger v. UOP, Inc.*, 457 A.2d 701, 710–11 (Del. 1983) (holding that nondisclosure of a feasibility study containing internal management projections violated the duty of candor because the projections were material information of obvious significance to minority stockholders); *In re Pure Res., Inc. S'holders Litig.*, 808 A.2d 421, 448–50 (Del. Ch. 2002) (holding that, in a cash-out merger, reliable management projections are of "obvious materiality" to stockholders and must be disclosed when they underpin the board's and the banker's valuation analyses).

[9] *Arnold v. Soc'y for Sav. Bancorp, Inc.*, 650 A.2d 1270, 1280 (Del. 1994) ("Delaware law does not require disclosure of inherently unreliable or speculative information which would tend to confuse stockholders or inundate them with an overload of information."); *In re PNB Holding Co.*

Although Wildenberg adequately alleged that the Quantitative Impairment Analysis was reliable,[10] he has failed to allege facts to support a reasonable inference that it was material to the investment decision.

(8)     Under the materiality test applied by the Court of Chancery,[11] an omitted fact is material if there is a "substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available."[12]     The Unitholder Presentation provided Wildenberg with a range of 2023 EBITDA forecasts, from $10,100,000 in the "Extended Recovery Case" to $22,480,000 in the "Upside Case." The Quantitative Impairment Analysis's 2023 EBITDA forecast of $20,740,000 fell within that range. Although the Quantitative Impairment Analysis presented a more upbeat outlook than the "Extended Recovery Case," the "Upside Case" offered an even higher benchmark against which to evaluate Sign-Zone's

*S'holders Litig.*, 2006 WL 2403999, at *16 (Del. Ch. Aug. 18, 2006) ("[B]ecause of their essentially predictive nature, our law has refused to deem projections material unless the circumstances of their preparation support the conclusion that they are reliable enough to aid the stockholders in making an informed judgment."); *Kihm v. Mott*, 2021 WL 3883875 (Del. Ch. Aug. 31, 2021) (quoting *PNB Holding*, 2006 WL 2403999, at *16) ("[R]eliable management projections of the company's future prospects are of obvious materiality to the electorate.").

[10] Appellant's Opening Br. at 17.

[11] The parties did not dispute in the trial court or on appeal whether materiality is the correct test in the context of an alleged omission.

[12] Opinion at *11 (quoting *Arnold*, 650 A.2d at 1277); *Skeen v. Jo-Ann Stores, Inc.*, 750 A.2d 1170, 1174 (Del. 2000) ("Omitted facts are not material simply because they might be helpful. To be actionable, there must be a substantial likelihood that the undisclosed information would significantly alter the total mix of information already provided.").

prospects.[13] We agree with the Court of Chancery that disclosing the Quantitative Impairment Analysis would not have significantly changed the overall mix of information available to Wildenberg as he considered whether to invest. Accordingly, the complaint fails to plead an actionable omission of material fact.

(9) Wildenberg also contends that Sign-Zone made affirmatively false statements about its financial condition. He points to April 2021 statements that allegedly painted an "inaccurate" and unduly negative picture of the company's prospects. Specifically, he cites (i) the CEO's comment that the company had "purportedly bad projections for future performance;" and (ii) the pessimistic tone of the Unitholder Presentation. According to Wildenberg, because Sign-Zone possessed the more favorable Quantitative Impairment Analysis, the CEO knew that the gloomier statements and projections were false. He argues that the Court of Chancery erred at the motion to dismiss stage by failing to draw in his favor all reasonable inferences from these allegations.

(10) Even under Delaware's plaintiff-friendly pleading standard, the complaint fails to plead any actionable affirmative misrepresentation. Under

---

[13] We held a similar omission immaterial in *Olenik v. Lodzinski*, 208 A.3d 704 (Del. 2019). In that case, the plaintiff claimed that a proxy statement in a controller-led merger was materially misleading because it omitted a prior contribution analysis that portrayed the merger's 40/60 ownership split less favorably than the analysis included in the proxy. *Id.* at 706–09. We held that the omission was not material because the disclosed analysis did not differ from the earlier one in any meaningful way. Investors already had sufficient information and, as we explained, "were free to place the emphasis where warranted" in evaluating the ownership split. *Id.* at 720.

7

Delaware law, predictions or expressions of opinion about future events generally are not treated as false statements of fact[14] absent particularized allegations that the speaker knew the statements were false when made.[15] At the pleading stage, "[k]nowledge can be adequately alleged where well-pleaded facts make it 'reasonably . . . inferred that this "something" was knowable and that the defendant was in a position to know it.'"[16] A complaint that pleads such specific facts typically survives a motion to dismiss;[17] one that does not is dismissed.[18]

(11) Here, Wildenberg's complaint pleads no facts supporting a reasonable inference that the Sign-Zone defendants knew that their statements or projections

---

[14] *Great Lakes Chem. Corp. v. Pharmacia Corp.*, 788 A.2d 544, 554 (Del. Ch. 2001) ("Predictions about the future cannot give rise to actionable common law fraud."); *E. States Petroleum Co. v. Universal Oil Products Co.*, 2 A.2d 138, 140 (Del. Ch. 1938) ("It is a general proposition of law that in order for a false representation to be such as to warrant rescission, it must be of a fact as distinguished from a mere expression of opinion."); *Nye Odorless Incinerator Corp. v. Felton*, 162 A. 504, 511 (Del. Super. 1931) ("Generally, fraud cannot be predicated upon the mere expression of opinion which is understood to be only as such nor upon mere representations of matters of estimate or judgment.").

[15] *KnighTek, LLC v. Jive Commc'ns, Inc.*, 225 A.3d 343, 353 (Del. 2020) (holding that an opinion becomes actionable "where the declarant knows the statement to be false at the time it is made").

[16] *In re Swervepay Acquisition, LLC*, 2022 WL 3701723, at *20 (Del. Ch. Aug. 26, 2022); Ct. Ch. R. 9(b) (stating that at the pleading stage, "[k]nowledge . . . may be averred generally").

[17] *See, e.g.*, *Agspring Holdco, LLC v. NGP X US Holdings, L.P.*, 2020 WL 435555, at *17–18 (Del. Ch. July 30, 2020) (denying a motion to dismiss under a similar fact pattern where the complaint alleged specific facts permitting a reasonable inference that the company knew that its more optimistic forecast was false, including board meetings where the company's financial decline was discussed and internal communications stating that the deal must close before the forecasts worsened more).

[18] *See, e.g.*, *Neurvana Medical, LLC v. Balt USA, LLC*, 2020 WL 949917 (Del. Ch. Feb. 27, 2020) (granting a motion to dismiss where the complaint "neither allege[d] nor argue[d] what then-existing facts were supposedly false" to reasonably infer that the company's overly rosy timeline for regulatory approval was false at the time).

were false when made. His sole basis for inferring knowledge of falsity is the existence of the Quantitative Impairment Analysis—an analysis that fell within the spectrum of outcomes already disclosed to Wildenberg. Its existence does not indicate that Sign-Zone's management knew that the company's future would unfold as optimistically as the analysis suggested. Unlike cases in which plaintiffs have identified concrete contemporaneous facts or internal data revealing that management's public projections were knowingly baseless or had been superseded by contrary information, Wildenberg identifies no such evidence here.[19] Absent well-pleaded facts permitting a reasonable inference that Sign-Zone's representatives knew that the bleak view they conveyed was false, those representations amount to non-actionable opinions about an uncertain future rather than fraudulent misstatements of present fact.

(12) In sum, Wildenberg's complaint fails to allege that Sign-Zone supplied false information—whether by omission or by affirmative misstatement—to support his claim of negligent misrepresentation. Because the Court of Chancery correctly determined that no false statement of fact or actionable omission was pleaded, dismissal of the complaint was proper.

---

[19] *See supra* note 17.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Court of Chancery is AFFIRMED.

BY THE COURT:

*/s/ Abigail M. LeGrow*
Justice